Charles WHITING, III, and Eric Anderson, et al., Plaintiffs, Appellants,

v.

TOWN OF WESTERLY and Mark Champlin, Defendants, Appellees.

No. 90–1757.

United States Court of Appeals, First Circuit.

Heard Feb. 5, 1991.

Decided Aug. 9, 1991.

Gary D. Berkowitz, Pawtucket, R.I., for plaintiffs, appellants.

Eric B. Schnurer and Douglas Lasdon on brief for Legal Action Center for Homeless, amicus curiae.

John C. Levanti, Town Sol., Dunns Corners, R.I., for defendants, appellees.

Before BREYER, Chief Judge, CAMPBELL and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

The plaintiffs, Charles Whiting and Eric Anderson represent a certified class consisting of individuals arrested pursuant to two ordinances enacted by the Town of Westerly, one banning sleeping in a motor vehicle either in public or on the private property of another, the other banning sleeping outdoors in public or on the private property of another. The district court ruled in favor of the Town of Westerly, finding that neither the ordinances themselves nor the means of enforcement violated the United States Constitution. Plaintiffs appeal from the judgment of the district court. 743 F.Supp. 97. We affirm.

## I.

During the 1960's, the Town of Westerly, a beach community in Rhode Island, passed two municipal ordinances banning sleeping out-of-doors, either in the open air or in

one's motor vehicle.[1] These ordinances are enforced by the Westerly police department during the summer season. Each summer, between Memorial Day and Labor Day, a special detachment, known as the "Beach Patrol," is formed to patrol the Misquamicut Beach area and enforce the challenged ordinances.

On Memorial Day weekend in 1988, Charles Whiting travelled to Westerly from his home in Connecticut, planning to spend the weekend enjoying the beach. Lacking reservations, he and his companion were unable to secure accommodations for the evening. Having consumed alcohol, they decided not to drive away from the beach area to find a room and instead spent the night in the back of Whiting's Chevrolet Blazer in a parking lot near the beach.

Around 3:30 a.m., on May 30, 1988, Westerly police arrested Whiting and charged him with violating town ordinance section 19–2. The police took Whiting to the Westerly police station and detained him for at least five hours. Later that morning, he was brought before Justice of the Peace John Adamo; Whiting signed a document granting Adamo power of attorney to enter a plea of guilty or *nolo contendere* on his behalf.[2] Whiting paid Adamo twenty dollars for bail and fifteen dollars for Adamo's appearance on his behalf. Whiting was then released from custody. On May 31, 1988, Adamo appeared for Whiting in Fourth Division District Court and entered a plea of *nolo contendere*.

Later that same summer, over the Fourth of July weekend, Eric Anderson and a friend travelled to Westerly, planning to camp at a campsite for the holiday weekend. When he arrived, Anderson was told by a local shop owner that there were no campsites in Westerly and that Anderson was unlikely to find any other type of lodging. Anderson was, in fact, unable to secure accommodations for the night and, around 1:00 a.m. on the morning of July 3, parked in the Misquamicut Beach parking lot in Westerly and went to sleep on a mattress in the back of his van.

Around 3:30 a.m., Anderson was arrested by Westerly police and, like Whiting, was charged with violating section 19–2 of the town code. He was taken to the police station and detained for several hours. He was brought before Justice of the Peace Santo Turano, signed a document granting Turano power of attorney, paid a twenty-five dollar fee to Mr. Turano along with twenty dollars for bail, and was released. Mr. Turano subsequently appeared in state court on Anderson's behalf and entered a plea of *nolo contendere*.

At trial, the parties stipulated that, in 1987, one hundred and seventy people were arrested under the challenged ordinances. Of those arrested, fifteen were Rhode Island residents, eleven of whom were given summonses and released. Of the one hundred and fifty-five nonresidents arrested, all but two executed the power of attorney before a Justice of the Peace. In 1988, eighty-two people were arrested, fourteen from Rhode Island. All but two of the Rhode Islanders were given summonses.

1. The challenged ordinances provide:
   Sec. 19–2. Sleeping in public—In motor vehicles.
   It shall be unlawful for any person to sleep in the nighttime in any motor vehicle of any description parked on any highway, public beach, parking lot, picnic ground, or on any other public, or semipublic area; or in any motor vehicle of any description parked upon the grounds of any other person in the town; or for any reason to aid, assist, encourage, or promote the same to be done by any other person.
   Sec. 19–3. Same—Out-of-doors.
   It shall be unlawful for any person to sleep in the nighttime on any highway, public beach, parking lot, picnic ground, or on any other public or semipublic area, or upon the grounds of any other person in the town; or for any person to aid, assist, encourage or promote the same to be done by any other person.

2. Section 12–21–21 of the General Laws of Rhode Island provides in pertinent part:
   Whenever any person who is charged with the commission of a misdemeanor punishable by a fine shall be without the confines of this state, said defendant may, ... by instrument in writing and duly acknowledged before an appropriate officer, authorize his attorney of record ... [to] enter on his behalf a plea of guilty or nolo contendere, and to pay such fine imposed by the court....
   R.I.Gen.Laws. § 12–21–21 (1981).

All of the nonresidents executed the power of attorney except for one individual who was charged with assault as well as violation of the challenged ordinance. In 1989, as of May 30, sixteen people had been arrested, all nonresidents. All sixteen executed the power of attorney. As of May 31st, the Town agreed not to enforce the ordinances, pending resolution of plaintiffs' suit challenging the ordinances.

Plaintiffs alleged in their complaint that the ordinances are unconstitutionally overbroad and vague. They also alleged that the differential treatment of nonresidents in the enforcement of the ordinance violates the equal protection clause of the fourteenth amendment. The district court rejected these constitutional challenges and denied relief. The plaintiffs, on behalf of themselves and the certified class, filed a timely notice of appeal.

## II.

A. *Facial Challenges: Overbreadth and Vagueness*

■■■ In a facial challenge to the overbreadth and vagueness of a law,[3] we must first consider whether the enactment reaches a substantial amount of constitutionally-protected conduct. If it does not, then the overbreadth challenge to the law must fail. In evaluating whether the Westerly ordinance reaches constitutionally-protected conduct, we note at the outset that the plaintiffs do not claim that their sleeping constituted expressive conduct implicating their rights under the first amendment. Rather, plaintiffs contend that their activity, simply sleeping in a public place, enjoys some degree of constitutional protection. We disagree.

The act of sleeping in a public place, absent expressive content, is not constitutionally-protected conduct. *See Hershey v. City of Clearwater*, 834 F.2d 937, 940 n. 5

(11th Cir.1987); *People v. Davenport*, 222 Cal.Rptr. 736, 738, 176 Cal.App.3d Supp. 10, 13 (Dep't Super.Ct.1985), *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1794, 90 L.Ed.2d 339 (1986); *but see City of Pompano Beach v. Capalbo*, 455 So.2d 468 (Fla.App. 4 Dist.1984) (holding that ordinance prohibiting sleeping in an automobile was unconstitutionally overbroad because it criminalized conduct which could not conceivably have been criminal in purpose or effect) *petition for review denied*, 461 So.2d 113 (Fla.), *cert. denied*, 474 U.S. 824, 106 S.Ct. 80, 88 L.Ed.2d 65 (1985). In *Hershey v. City of Clearwater*, the Eleventh Circuit rejected a challenge to a similar ordinance from which the words "or sleep" had been struck, leaving the ordinance applicable only to those who would "lodge in" their motor vehicles. The court noted, however, that an overbreadth challenge to the original ordinance would probably fail because " 'the sleeping prohibited appears to be of the general kind, which enjoys no peculiar constitutional advantage.' " 834 F.2d at 940 n. 5 (quoting *People v. Davenport, supra*, 222 Cal.Rptr. at 738).

The Supreme Court has never addressed the issue of whether sleeping in public enjoys constitutional protection; however, in *Clark v. Community for Creative Nonviolence*, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984), the Court upheld the refusal of the United States Park Service to grant a permit for demonstrators to sleep in Lafayette Park. There the Court assumed, without deciding, that sleeping could be a form of expression protected by the first amendment. However, the constitutional rights of the demonstrators at issue in *Clark* turned on the fact that their sleeping in the park was a form of political demonstration. The Court gave no indication that, absent such expressive activity, mere sleeping enjoys any measure of constitutional protection. On the contrary, the Court made clear that the government may

---

**3.** A "facial" challenge means a claim that the law is invalid on its face and "therefore incapable of any valid application." *Steffel v. Thompson*, 415 U.S. 452, 474, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505 (1974). In evaluating a facial challenge to a state law, a federal court must consider any limiting construction that a state court or

enforcement agency has proffered. *See Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362 (1981) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972)).

constitutionally prohibit overnight sleeping in public areas as an exercise of its police power. *Clark,* 468 U.S. at 288–89, 104 S.Ct. at 3066–67 (noting that "[n]o one contends that, apart from its impact on speech a rule against camping or overnight sleeping in public parks is beyond the constitutional power of the Government to enforce").

Because the Westerly ordinance does not reach a substantial amount of constitutionally-protected conduct, plaintiffs' overbreadth challenge must fail.

We recognize that a law which does not reach constitutionally-protected conduct and, therefore, surmounts the overbreadth test, may nevertheless be challenged as on its face unduly vague, in violation of due process. For such a facial challenge to succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications. From this requirement it follows that a plaintiff who engages in conduct that is clearly proscribed by the statute cannot complain that the statute is vague on its face nor challenge the vagueness of the law as applied to the conduct of others. *See Hoffman Estates,* 455 U.S. at 495, 102 S.Ct. at 1191; *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974). Under this standard, the plaintiffs' vagueness challenge must also fail here.

The plaintiffs, Whiting and Anderson, both engaged in conduct clearly prohibited by Section 19–2. The ordinance makes unlawful sleeping during the nighttime in one's motor vehicle on public or semipublic property or on the private property of another. Whiting and Anderson testified at trial that they engaged in precisely the activity prohibited by the ordinance. Given that their own conduct fell clearly within the scope of the ordinance, Whiting and Anderson cannot complain that the ordinance is unconstitutionally vague on its face, nor do they have standing to challenge the statute as applied to hypothetical third parties.

More broadly, we note that the Westerly ordinances differ from the traditional vagrancy ordinances, the vagueness of which has given rise to due process concerns in the past. In *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1982), the Supreme Court explained that "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* at 357, 103 S.Ct. at 1858. Invalidating a statute requiring an individual to produce "credible and reliable" identification when stopped by the police, the Court in *Kolender* emphasized that a criminal statute must not permit " 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.' " 461 U.S. at 358, 103 S.Ct. at 1858 (quoting *Smith v. Goguen,* 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)).

Unlike the statute at issue in *Kolender,* which left to the discretion of the police officer whether the individual's identification was "credible and reliable," the Westerly ordinances rely on no such indefinite standard. Rather, the ordinances prohibit sleeping or lodging in the nighttime in public or semipublic places. The officer patrolling the beach has a duty to arrest those who engage in the proscribed conduct. The ordinances are sufficiently clear to give notice to the violator and to protect against arbitrary enforcement or harassment on the part of police. This is particularly true in light of the limiting construction offered by the Town—that the word "sleep" is construed narrowly to mean "lodge." The Town's limiting construction is consistent with the stated purpose of the statute—to protect the public peace, health, and safety. Moreover, plaintiffs presented no evidence to suggest that the ordinance had ever been enforced against "mere nappers," such as a child asleep in a car seat or an individual dozing momentarily in his car while waiting for his companion to emerge from the cinema following a late movie.

## B. *Enforcement Procedures and Equal Protection*

In addition to their facial challenge, plaintiffs allege that the means of enforcing the ordinances against nonresidents of Rhode Island violates the equal protection clause of the fourteenth amendment. According to testimony at trial, Rhode Island residents arrested pursuant to the challenged ordinances are given a summons and released, after signing an agreement to appear in court to answer the charge. Nonresidents are not offered this option; instead, after they are arrested and incarcerated, they are given the choice of pleading *nolo contendere* or guilty and being released or posting bail and returning to Rhode Island for arraignment before a magistrate. Plaintiffs contend that this different treatment of nonresidents violates their rights to equal protection guaranteed by the fourteenth amendment.

 Under well-established principles of equal protection analysis, a challenged statute that does not employ a suspect classification or impinge upon fundamental rights must be upheld if it is rationally related to a legitimate governmental purpose. *See, e.g., Kadrmas v. Dickinson Public School*, 487 U.S. 450, 457–58, 108 S.Ct. 2481, 2486–87, 101 L.Ed.2d 399 (1988); *Hodel v. Indiana*, 452 U.S. 314, 331, 101 S.Ct. 2376, 2386, 69 L.Ed.2d 40 (1981). The challenged procedure does not involve the employment of a suspect classification. *See, e.g., Drake v. Gordon*, 848 F.2d 701 (6th Cir.1988) (applying rational basis review to Michigan no-fault insurance scheme which distinguished between resident and nonresident drivers). Although the classification does result in differential treatment as to the process afforded to resident and nonresident arrestees,[4] appellants have

not alleged that the Westerly enforcement procedure as applied to nonresidents violated their rights to procedural due process.[5] The utilization of different, but otherwise constitutionally adequate, procedures for residents and nonresidents does not, by itself, trigger heightened scrutiny under the Equal Protection Clause. *Cf. Boddie v. Connecticut*, 401 U.S. 371, 382, 91 S.Ct. 780, 788, 28 L.Ed.2d 113 (1970) (declining to hold that "access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual").

 The imposition of somewhat more burdensome requirements on nonresidents is rationally related to the state's legitimate interest in ensuring that nonresidents appear before a magistrate for arraignment. As the district court noted, if a nonresident were issued a summons and failed to appear in court, Westerly would be powerless to arrest the individual unless he returned to Rhode Island. Rhode Island residents, in contrast, are within the reach of local or state police should they fail to appear after being summoned. Residents and nonresidents therefore occupy very different positions with respect to Westerly's ability to secure their appearance. Because the distinction between residents and nonresidents in the Town's enforcement procedure is rationally related to the Town's legitimate interest in ensuring that those who violate town ordinances appear for arraignment, the differential treatment of nonresidents does not violate the equal protection clause. *See In re Merrill Lynch Relocation Management, Inc.*, 812 F.2d 1116 (9th Cir.1987) (upholding against an equal protection challenge a state statute

---

**4.** The district court concluded that rational basis review was appropriate because, by proscribing sleeping on the beach, the ordinances themselves did not implicate a fundamental right. We understand the equal protection challenge to concern the procedure following arrest and therefore believe that the correct focus is on the effects of the challenged procedure, not on the underlying ordinances.

**5.** In their brief on appeal, appellants do suggest at one point that the procedure violated their "due process rights." Nevertheless, apart from this single reference, their argument focuses entirely on the alleged equal protection violation. *Whether or not appellants have attempted to assert a due process argument on appeal*, they raised no such argument in the district court. We therefore decline to consider it for the first time on appeal. *See Sandstrom v. Chemlawn Corp.*, 904 F.2d 83, 87 (1st Cir.1990).

making attorney of nonresident liable for security costs); *Hawes v. Club Ecuestre El Comandante,* 535 F.2d 140 (1st Cir.1976) (upholding against equal protection challenge a local rule requiring nondomiciliary plaintiffs to post security for costs, expenses, and attorney fees).

### III.

As the challenged ordinances do not reach a significant amount of constitutionally-protected conduct and provide sufficient notice as to the prohibition of the conduct in which appellants were engaged, appellants' overbreadth and vagueness challenges fail. Moreover, because the procedure concerning nonresident violators is rationally related to the town's legitimate interest in ensuring that they appear for arraignment, we hold that the appellants' equal protection challenge is also without merit.

*Affirmed. Costs to appellees.*