**Rhonda B. KESSLER,**

v.

**CITY OF PROVIDENCE; John J. Partington, Individually and in his official capacity as Providence Commissioner of Public Safety; Urbano Prignano, Jr., Individually and in his official capacity as Providence Chief of Police.[1]**

No. 00–566ML.

United States District Court, D. Rhode Island.

Sept. 28, 2001.

---

**1.** The current Chief of Police for the City of Providence is Colonel Richard T. Sullivan.

John William Dineen, Yesser, Glasson & Dineen, Providence, RI, for plaintiff.

Kevin F. McHugh, City of Providence Law Dept., Providence, RI, for defendants.

### MEMORANDUM AND ORDER

LISI, District Judge.

This case is before the Court on the Plaintiff's motion for partial summary judgment. In addition, the individual Defendants have moved for summary judgment as to all claims, and the Defendant City of Providence has moved to dismiss the complaint. Plaintiff contends that she is entitled to judgment as a matter of law on her facial challenge to General Order No. 16 and Conduct Regulation 200.4–Divulging Information. Defendants oppose Plaintiff's motion and seek judgment in their favor on this claim. For the reasons set forth below, Plaintiff's motion is granted and Defendants' motions are denied.

### I. FACTS

On March 26, 1997, the Providence Police Department ("Department") enacted General Order No. 16, (Series of 1997):

No member of this department shall be interviewed as a representative of this department without express authorization from the Chief of Police or the Director of Public Affairs. Any inter-view in which it may be construed that the member is speaking as a representative of this department falls within the constraints of this rule.

No member of this department shall make any public statement regarding a private matter of this department.

No member of this department shall make a public statement on a matter of public concern relating to this department where the statement may lead to disruption within the police department workplace.

At the time General Order No. 16 ("Order No. 16") was enacted, Providence Police Officers were also required to follow certain "Conduct Regulations." Regulation 200.4–Divulging Information ("Regulation 200.4") provides:

A member or employee of the department shall not divulge to any unauthorized person, in or out of the department, i.e. (one who does not have an official "need to know") any information concerning the business of the department and shall not talk for publication, be interviewed, make public speeches on police business or impart information relating to the official business of the department unless authorized by some proper authority.

Plaintiff, a sergeant in the Uniformed Division of the Providence Police Department, was disciplined for violating Order No. 16 in October of 1999, based on statements she made in September of 1999. The following is a brief discussion of the facts leading up to this event.

In September and October of 1999, Plaintiff was named in a series of articles published in the *Providence Journal* (the "*Journal*"), regarding community concern over two alleged sexual assaults in the Elmhurst neighborhood of Providence, and the Providence Police Department's (the

"Police Department") response to those incidents. Around the same time, the *Journal* published portions of a letter written to the Police Department in which the parents of one of the alleged victims criticized Plaintiff's initial investigation of the alleged assault on their child.

Major Dennis Simoneau, the head of the Patrol Bureau, investigated the allegations made about Plaintiff's conduct and found that Plaintiff had not violated any Police Department policy and that no discipline was necessary. Plaintiff was informed of these findings on or about September 9, 1999.

In mid-September, 1999, Plaintiff told the *Journal* reporter who wrote the aforementioned articles that "[she] didn't do anything wrong" and that she had not been disciplined. Plaintiff's comments were published in the *Journal* on September 21, 1999.

On September 21, 1999, Major Simoneau asked Plaintiff whether she had received permission from the Police Department to speak to the media. Plaintiff responded in writing, stating that "no one gave me permission to speak to the press." Major Simoneau sent a memorandum to then Police Chief Colonel Urbano Prignano, recommending that Plaintiff be disciplined for violating Order No. 16. On October 6, 1999, Plaintiff was notified that the Police Department was suspending her for one day without pay for speaking to the *Journal* in violation of Order No. 16.

Plaintiff filed this lawsuit in November, 2000. She contends that Order No. 16 and Regulation 200.4 violate the First Amendment. Plaintiff seeks declaratory and injunctive relief, invalidating and enjoining Order No. 16 and Regulation 200.4.

## II. STANDARD OF REVIEW

Summary judgment shall be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The fact that both parties to a lawsuit move for summary judgment simultaneously does not relax the standards set forth in Rule 56. *See Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996). On the contrary, the Court "must consider each motion separately, drawing all inferences against each movant in turn." *Id.* The Court therefore must view all facts and draw all inferences in the light most favorable to the nonmoving party. *Reich v. John Alden Life Ins. Co.,* 126 F.3d 1, 6 (1st Cir.1997) (quoting *EEOC v. Steamship Clerks Union, Local 1066,* 48 F.3d 594, 603 n. 8 (1st Cir.1995)).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. *Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "Summary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Nar-*

*ragansett Elec. Co.,* 777 F.Supp. 167, 169 (D.R.I.1991) (citation omitted).

## III. DISCUSSION

The First Amendment, applied to the states through the Fourteenth Amendment, prohibits government restrictions on the right of its citizens to speak freely: "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. Restrictions on this right may be justified in certain situations. In this case, however, the Court finds that the challenged Police Department regulations impermissibly infringe on government employee speech.

### A. Plaintiff's motion for partial summary judgment

Plaintiff sets forth four arguments in support of her contention that Order No. 16 and Regulation 200.4 (collectively the "Police Rules" or the "Rules") are facially unconstitutional: (1) they create an impermissible prior restraint on speech; (2) they give unlimited discretion to the Chief of Police/Director of Public Affairs to grant or deny permission to speak; (3) they contain no time frame within which permission in response to a request to speak may be granted; and, (4) they are vague and overbroad. The Court will address each of Plaintiff's arguments in turn.

### 1. The Police Rules create an impermissible prior restraint on government employee speech

A prior restraint rule "is a government regulation that limits or conditions in advance the exercise of protected First Amendment activity." *Auburn Police Union v. Carpenter,* 8 F.3d 886, 903 (1st Cir.1993) (citation omitted). In *United States v. Nat'l Treasury Employees Union* [hereinafter *NTEU*], the Supreme Court dealt specifically with a challenge by gov-ernment employees to a regulation that limited their ability to speak. 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995). Prior to the Supreme Court's ruling in *NTEU,* cases involving restraints on job-related speech of public employees usually "involved disciplinary actions taken in *response* to a government employee's speech." *Id.* at 466, 115 S.Ct. 1003 (emphasis added). A rule that "forces a person to ask permission to speak bears a heavier presumption against constitutionality than one that merely penalizes people who have already spoken." *Providence Firefighters Local 799 v. City of Providence,* 26 F.Supp.2d 350, 355 (D.R.I.1998) (citing *NTEU,* 513 U.S. 454, 468, 115 S.Ct. 1003 (1995)). This is true because a prior restraint on speech "chills potential speech before it happens," and thus "gives rise to far more serious concerns than could any single supervisory decision." *NTEU,* 513 U.S. at 468, 115 S.Ct. 1003 (citations omitted).

The Police Rules at issue here clearly impose prior restraints on the speech of members of the Providence Police Department. The first provision of Order No. 16 provides that "[n]o member of this department shall be interviewed as a representative of this department [or as someone who may be construed as a representative] *without express authorization ...*." Similarly, Regulation 200.4 prohibits members of the Police Department from divulging "any information concerning the business of the department ... *unless authorized by some proper authority.*" (emphasis added). Under *NTEU,* however, the analysis does not end here.

#### a. NTEU test

■ In determining the validity of a prior restraint on the speech of public employees, the Supreme Court directs courts to look at whether the restriction

regards matters of public concern. *See NTEU*, 513 U.S. at 466, 115 S.Ct. 1003; *Pickering v. Bd. of Educ. of Township High Sch.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (establishing that government employee speech may qualify for constitutional protection if the speech involves "matters of public concern"). Restrictions on speech relating to matters of personal interest to an employee are not subject to the same judicial scrutiny as those which seek to silence the employee, as a citizen, from commenting on matters of public concern.[2] *See NTEU*, 513 U.S. at 466, 115 S.Ct. 1003; *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731; *Firefighters*, 26 F.Supp.2d at 356; *see also Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir.2000) (citations omitted) ("If a public employee's speech made in his capacity as private citizen does not touch upon a matter of public concern, the state, as employer, may regulate it without infringing any First Amendment protection."); *id.* at 407 (citations omitted) (stating that "critical to a determination of whether employee speech is entitled to First Amendment protection is whether the speech is 'made primarily in the [employee's] role as citizen or primarily in his role as employee' ").

A matter of public concern is one "relating to [a] matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Matters that affect the "public health and safety are clearly matters of public concern." *Firefighters*, 26 F.Supp.2d at 356 (citing *Cirelli v. Town of Johnston*, 897 F.Supp. 663, 665–66 (D.R.I.1995)); *see also Brasslett v. Cota*, 761 F.2d 827, 844 n. 14 (1st Cir.1985) (stating that fire department matters are "prototypical matter[s] of public interest"). Obviously, many police department policies, procedures, and rules affect, or have the potential to affect, the public health and safety and may qualify as "matters of public concern."[3]

Restrictions on speech relating to matters of public concern are subject to heightened scrutiny because the public has a substantial interest in being informed about matters that are of vital importance to their health and safety. *See, e.g., Brasslett*, 761 F.2d at 844; *Cirelli*, 897 F.Supp. at 665–66. At the same time, public employees "have not relinquished 'the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest.' " *NTEU*, 513 U.S. at 465,

**2.** To illustrate the difference, the Supreme Court noted that "private speech ... involv[ing] nothing more than a complaint about a change in the employee's own duties may give rise to discipline without imposing any special burden of justification on the government employer." *NTEU*, 513 U.S. at 466, 115 S.Ct. 1003 (citation omitted). Further still, "employee comment on matters related to personal status in the workplace" is not generally considered protected speech. *Id.*

**3.** In determining whether speech on matters of public concern is protected, the court focuses on the capacity of the speaker (i.e., whether the employee is speaking in his role as a citizen or as an employee). For example, suppose an assistant district attorney, at the District Attorney's direction, makes a for-

mal statement to the press regarding an upcoming murder trial—a matter that is unquestionably of concern to the public. It cannot seriously be doubted that the assistant *does not* possess a First Amendment right to challenge his employer's instructions regarding the content of the statement. In contrast, when the same assistant district attorney writes a letter to the editor of the local newspaper to expose a pattern of prosecutorial malfeasance, the speech is entitled to constitutional protection because it is made in the employee's capacity as a private citizen and touches on matters of public concern.
*Urofsky v. Gilmore*, 216 F.3d 401, 407–08 (4th Cir.2000) (emphasis added).

115 S.Ct. 1003 (quoting *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731). If a prior restraint is found to prohibit speech on matters of public concern "[t]he Government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *NTEU*, 513 U.S. at 468, 115 S.Ct. 1003 (quoting *Pickering*, 391 U.S. at 571, 88 S.Ct. 1731). A restriction will not be upheld absent a showing by the government that it has "a reasonable ground to fear that serious evil will result if free speech is practiced." *NTEU*, 513 U.S. at 475, 115 S.Ct. 1003 (quoting *Whitney v. California*, 274 U.S. 357, 376, 47 S.Ct. 641, 71 L.Ed. 1095 (1927)). Mere speculation and conjecture about the possibility of harmful results is not enough. *See id.; Firefighters*, 26 F.Supp.2d at 355–56.

b. Applying the *NTEU* test to the facts of this case

i. Interests of the Employees and Public

The Police Rules clearly require that Police Department employees seek advance permission to speak, as citizens, on matters of public concern. The Rules are not narrowly drawn; they require prior approval before an employee makes a public statement on any topic even remotely related to Police Department matters. As a result, the Rules inevitably stifle Police Department employees in their role as citizens. The first provision of Order No. 16 prohibits "*[a]ny interview* in which it may

be construed that the member is speaking as a representative of this department." (emphasis added). The second provision prohibits all members of the Police Department from "mak[ing] *any public statement* regarding a private matter [4] of this department." (emphasis added). The third provision prohibits all members of the Police Department from "mak[ing] *a public statement on a matter of public concern* relating to this department where the statement may lead to disruption within the police department workplace." (emphasis added).

Similarly, Regulation 200.4 prohibits all members of the Police Department from divulging "to any unauthorized person, in or out of the department, . . . *any information concerning the business of the department.*" (emphasis added). This provision prohibits comment on just about anything having to do with the "business of the Police Department." Such an all-encompassing ban necessarily works to deprive Police Department employees of their First Amendment right, as citizens, to comment on matters of public interest, thereby depriving the public of information regarding matters relevant to public health and safety. Therefore, absent a showing by the Defendants that they have a substantial interest in such a sweeping ban on their employees' speech, the Police Rules must be struck down as violative of the First Amendment. *See NTEU*, 513 U.S. at 454–55, 115 S.Ct. 1003.

ii. Governmental Interest

Order No. 16 and Regulation 200.4 are similar to the City of Providence Fire De-

---

4. In either a crude attempt to restrict unprotected speech, or purely by accident, this provision purports to prohibit speech on solely "private matters." While government employee speech relating to private matters may not be protected, this provision provides no guidance regarding the Police Department's

definition of a "private matter." A private matter to the Police Department may very well fall within the Supreme Court's definition of "matters of public concern." *See* NTEU, 513 U.S. at 466, 115 S.Ct. 1003; *Connick*, 461 U.S. at 146, 103 S.Ct. 1684; *Pickering*, 391 U.S. at 568, 571, 88 S.Ct. 1731.

partment's rule at issue in *Firefighters*, which the court found to be unconstitutional under *NTEU*, in part, because it "imposed clumsy and overbroad restrictions on all speech about the fire department." 26 F.Supp.2d at 356. The fire department's rule in *Firefighters* provided:

> In accordance with the Rules and Regulations governing the Department this General Order is issued to serve notice to all members that only the Chief of Department has the authority to discuss for publication, matters concerning the Department. This general order is also to serve notice that only the Chief of Department may deliver any address, lecture or speech on Providence Fire Department matters. Members shall not participate in the above stated activities without the approval of the Chief of Department. Failure to comply with these stated Rules and Regulations of the Department shall result in the prereferral of Departmental Charges.

*Id.* at 352. In an attempt to satisfy the test of *NTEU*, the fire department offered a number of justifications for this rule. *See id.* at 356. The court rejected these arguments as "vague 'speculation about the pernicious effects' of speech that the Supreme Court explicitly rejected" in *NTEU*. *Id.* (quoting *NTEU*, 513 U.S. at 475–76 n. 21, 115 S.Ct. 1003).

In contrast, the Defendants in this case do not defend the propriety of Order No. 16 or Regulation 200.4 based on a substantial or overriding interest in preventing consequences the Rules were presumably promulgated to avoid. Save some general references to the *NTEU* balancing test, Defendants *fail* to demonstrate that the Police Rules address *any potential harms*, or advance *any substantial government interest.* Rather, Defendants' argument focuses almost exclusively on Order No. 16 as applied to the Plaintiff.[5] By focusing on Plaintiff's particular conduct, Defendants virtually ignore the "balancing of interests" test articulated in *NTEU*, and thereby fail to carry their evidentiary burden.

■ Plaintiff's individual circumstances are largely irrelevant. The relevant question under NTEU is whether the government's interest in regulating speech outweighs the interests of both "present and future employees in a broad range of present and future expression," and their "potential audiences." *NTEU*, 513 U.S. at 468, 115 S.Ct. 1003. The test requires the reviewing court to go beyond the facts of the particular case before it when considering this type of challenge. Certainly, the Police Department could have implemented narrowly tailored restrictions on employee speech (i.e., forbidding its employees from commenting on ongoing investigations); instead it imposed the same "clumsy and overbroad restrictions on all speech" that were invalidated in *Firefighters*, 26 F.Supp.2d at 356. Because the Police Department restrictions implicate a broad range of protected speech, and the Defendants fail to offer any justification for the Rules, let alone sufficient justification (nor could the Court imagine any), the Court finds that Order No. 16 and Regulation 200.4 violate the First Amendment. Although the Court finds that the Police Rules are unconstitutional as an impermissible prior restraint on government employee speech, the Court will nonetheless

---

**5.** Specifically, Defendants argue that (1) Plaintiff's statements were of a purely private matter, and therefore not protected; (2) because Kessler "disobey[ed] a superior officer .... [t]he police department needs the latitude to discipline such an officer even if the First Amendment is involved"; and, (3) because Plaintiff's comments related to an ongoing investigation, the Police Department "should be allowed to prevent her from publicly commenting on anything to do with the case."

address the merits of Plaintiff's remaining claims.

### c. Unlimited Discretion/Lack of Time Frame

Plaintiff contends that the Police Rules are facially unconstitutional because (1) they give unlimited discretion to a government decision-maker to grant or deny a member of the Police Department permission to speak, and (2) they contain no time frame within which permission in response to a request to speak may be granted.

■ Standing alone, a lack of adequate procedural safeguards does not render a regulation unconstitutional per se. However, while the majority of decided cases in this area involve licensing and permitting statutes, any regulatory scheme that grants broad discretion to a government decision-maker, or fails to place specific time limits on the decision making process, runs contrary to the Supreme Court's disapproval of "similar discretionary provisions that enable the government to control speech" on the basis of the viewpoint expressed. *Sanjour v. Envtl. Prot. Agency*, 56 F.3d 85, 97 (D.C.Cir.1995) (en banc) (citing *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 763, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); *see FW/PBS, Inc., dba Paris Adult Bookstore II v. City of Dallas*, 493 U.S. 215, 223–24, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)) (citation omitted) (stating that when a regulatory scheme lacks a time frame within which a decision must be made "every application of the statute create[s] an impermissible risk of suppression of ideas"). Order No. 16 sets no standards to guide the decision-making process, does not require any explanation for a denial of permission to speak, and proposes no time frame for such grant or denial. Regulation 200.4 suffers from the same infirmity.

Defendants argue that the discretion regarding permission for members of the Police Department to speak is not unlimited because members are entitled to a hearing prior to being punished for an alleged violation of a rule or regulation of the Police Department, and a member may file a grievance under Article XIV of the Collective Bargaining Contract if the punishment to be imposed consists of a two day suspension (or more) without pay. This argument misses the mark. Although there may be some restrictions on the power to impose punitive sanctions *after the fact*, the Police Rules give the decision-maker virtually plenary power to censor protected speech before it occurs.

Thus, assuming, *arguendo*, that a weighing of the respective interests in this case favored the Defendants, the Police Rules would still be an impermissible means to achieve that interest. *See Sanjour*, 56 F.3d at 96. At the very least, in the context of the *NTEU* balancing test, the Police Rules' lack of procedural safeguards tips the scale even more heavily in favor of their invalidation. *See id.* at 97.

### 2. Overbreadth challenge [6]

Plaintiff contends that the Police Rules are facially unconstitutional under the overbreadth doctrine. "The First Amendment overbreadth doctrine is concerned with the scope of a rule, i.e., with whether a rule's application extends so far as to prohibit a substantial amount of protected speech." *Wagner v. City of Holyoke*, 100

---

**6.** Plaintiff also contends that the Police Rules are void for vagueness. Because Plaintiff's motion does not argue that the Police Rules are vague as applied to her particular conduct, she may not challenge the Rules on vagueness grounds. *See Parker v. Levy*, 417 U.S. 733, 755–56, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Whiting v. Town of Westerly*, 942 F.2d 18, 22 (1st Cir.1991).

F.Supp.2d 78, 84 (D.Mass.2000); *see also Whiting v. Town of Westerly,* 942 F.2d 18, 21 (1st Cir.1991). Unlike the vagueness doctrine, "[l]itigants ... are permitted to challenge a statute [for overbreadth] not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). In considering a facial challenge to the overbreadth of a regulation courts "must first consider whether the enactment reaches a substantial amount of constitutionally-protected conduct. If it does not, then the overbreadth challenge to the law must fail." *Whiting v. Town of Westerly,* 942 F.2d 18, 21 (1st Cir.1991).

Order No. 16 implies that authorization is required before speaking on *any* topic, not solely Police Department matters, if the speaker will be acting as a "representative" of the Police Department, or "may be construed" as such. Order No. 16 also implies that it's restrictions govern an officer's speech while both on and off duty. Further, Order No. 16 proscribes speaking even on matters of public concern *if* it "may lead to disruption" within the Police Department. Similarly, Regulation 200.4 prohibits speech involving "any information concerning the ... department." The Police Rules paint with an extremely broad brush; they prohibit potentially all speech even remotely related to the Police Department. In other words the Rules prohibit a very substantial amount of otherwise permissible speech. The law in this area is clear:

> Where an ordinance is not narrowly drawn, or is "overbroad," the ordinance's very existence may inhibit or chill the free expression of speech protected by the First Amendment. For

this reason, an overbroad ordinance may be struck down entirely even though, as applied, it may prohibit some forms of expression which are not constitutionally protected.

*Firefighters,* 26 F.Supp.2d at 357 (citing *Broadrick,* 413 U.S. at 611–12, 93 S.Ct. 2908). Thus, while the Rules may also prohibit speech that is not constitutionally protected, their substantial impact on constitutionally protected speech is fatal, and they are void under the overbreadth doctrine. For the stated reasons, Plaintiff's motion for partial summary judgment is granted, and Defendants' motion for summary judgment is denied. Order No. 16 and Regulation 200.4 are declared void, and Defendants are enjoined from enforcing them against Plaintiff or any member of the Providence Police Department.

**B. Defendants' remaining motions.**

Defendants Prignano and Partington (the "individual Defendants") have made a motion for summary judgment pursuant to Fed.R.Civ.P. 56, based on the doctrine of qualified immunity. The Defendant City of Providence has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), seeking dismissal of the case in the event the individual Defendants' motion for summary judgment is granted.

The First Circuit has stated that "[g]overnment officials are 'shielded from liability for civil damages' under [42 U.S.C. § ] 1983 unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bilida v. McCleod,* 211 F.3d 166, 174 (1st Cir.2000) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In this case, Plaintiff is not seeking damages against Defendants Prignano and Partington; instead she seeks one day's wages

from the Police Department that she lost from the suspension. Therefore, Defendants can not assert the doctrine of qualified immunity as an affirmative defense. For this reason, the individual Defendants' motion for summary judgment is denied; and therefore, the Defendant City of Providence's motion to dismiss, which is inexorably tied to Prignano and Parrington's motion for summary judgment, is also denied.

## IV.  CONCLUSION

For the reasons stated, Plaintiff's motion for partial summary judgment is granted, and Defendants' motions are denied.

SO·ORDERED.