**EMC CORPORATION**

v.

**Wanda ROLAND.**

**Civil Action No. 95–11207–GAO.**

United States District Court,
D. Massachusetts.

Jan. 17, 1996.

Arthur G. Telegen, Michele A. Whitham, Amy B.G. Katz, Foley, Hoag & Eliot, Boston, MA, for Plaintiff.

Betsy L. Ehrenberg, Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C., Boston, MA, Norman J. Slawsky, David J. Worley, Jacobs & Slawsky, Atlanta, GA, Phillip McKinney, Lisa B. Golan, Rogers & Hardin, Atlanta, GA, for Defendant.

## MEMORANDUM OF DECISION

O'TOOLE, District Judge.

By this action, the plaintiff EMC Corporation seeks a declaration that it did not discriminate against the defendant Wanda Roland in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, or the Equal Pay Act of 1963, 29 U.S.C. § 206(d). Roland has moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Alternatively, Roland contends that this Court should dismiss the action, exercising the discretion proper under the Declaratory Judgment Act, 28 U.S.C. § 2201. For the reasons set forth in this memorandum, the Court grants Roland's motion and dismisses the action on the alternative ground.

## BACKGROUND

The complaint alleges the following facts: EMC is a Massachusetts corporation with its principal place of business in Hopkinton, Massachusetts. The company designs, manufactures, markets and supports high performance memory and data storage products for mainframe and midrange computer systems. Roland resides in Snellville, Georgia.

In July 1991, EMC hired Roland to work as a sales administrator in EMC's Atlanta, Georgia office. A year later, the company transferred Roland, at her request, to the position of regional administrator at its customer service organization, also located in Georgia. As regional administrator, Roland reported to Bill Wolak, the company's regional service manager.

During the spring of 1993, Roland exhibited problems in her job performance. She met with Wolak several times over the course of several months to discuss these problems. On September 29, 1993, Roland spoke with Paul Crivello, a Human Resources Manager at EMC's Massachusetts headquarters, and asserted for the first time that Wolak, her supervisor, had made sexual remarks to her about a year and a half earlier, in March 1992.

On October 29, 1993, EMC received a note from Dr. David Ellis stating that he had evaluated Roland's stress-related physical problems and had advised her to refrain from working for a minimum of two weeks. In accordance with company policy, EMC placed Roland on short-term disability leave on November 1, 1993. On December 8, 1993, EMC received a second note from Dr. Ellis requesting that Roland be granted an "undetermined" leave of absence from work. A month later, when Roland's short-term disability leave was about to expire, EMC sent Roland the necessary documents to apply for a long-term disability leave. Roland did not apply, nor did she agree to submit to an independent medical examination to determine her eligibility for an extended job absence.

On January 14, 1994, Roland spoke with Crivello and alleged that Wolak had sexually harassed her. EMC conducted an investigation and concluded that there had been no sexual harassment. EMC then "encouraged" Roland to return to work and offered to assign her to a position in which she would not have to report to Wolak. Because such a position was not available in Atlanta, the offer entailed a move to a new geographic location. Roland did not agree to the transfer and failed to report back to her job.

On March 18, 1994, the Equal Employment and Opportunity Commission's Atlanta District Office notified EMC that Roland had filed a charge of discrimination against the company. The charge alleged sexual harassment, sex discrimination, and retaliation, all in violation of Title VII and the Equal Pay Act.

In April 1994, Roland applied for long-term disability leave, but EMC's long-term disability insurer denied her request. Because Roland's short-term disability leave period had expired and her application for long-term disability leave had been denied, she was ineligible for any leave of absence under

company policy. On August 22, 1994, EMC informed Roland that she was required to return to work if she desired to remain employed by the company, and asked to be notified of Roland's intentions by August 26, 1994. When that deadline passed without word from Roland, EMC deemed her to have resigned from her position.

On January 26, 1995, Roland's attorney advised EMC that Roland intended to file suit against EMC for violation of Title VII and for intentional infliction of emotional distress. On February 1, 1995, Roland filed an amended charge with the EEOC. On May 31, 1995, the EEOC issued Roland a right-to-sue letter. EMC filed this action on June 9, 1995. On June 28, 1995, Roland filed suit against EMC in the United States District Court for the Northern District of Georgia. EMC requested the Georgia court to stay Roland's suit pending resolution of her motion to dismiss the Massachusetts action. That motion has been denied.

### DISCUSSION

■ The Court rejects Roland's contention that the Court lacks subject matter jurisdiction over this action. A federal court properly has jurisdiction over a declaratory judgment action where, "if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Board of the State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 19, 103 S.Ct. 2841, 2851, 77 L.Ed.2d 420 (1983). Here, the declaration sought by the plaintiff relates to what rights Roland may have against EMC under Title VII and the Equal Pay Act; the action plainly presents a federal question.

■ Even when a court properly has jurisdiction over a declaratory judgment action, however, the court is not required to exercise that jurisdiction. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a court "may" provide declaratory relief, but the decision to award such relief rests within the court's discretion. *See El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 493 (1st Cir.

1992) (noting that the Act "neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies"). "Because the Act offers a window of opportunity, not a guarantee of access, the courts, not the litigants, ultimately must determine when declaratory judgments are appropriate and when they are not." *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 534 (1st Cir.1995).

■ Whenever two similar actions are pending, the first-filed suit is ordinarily given priority, but in particular cases there may be good reasons for making an exception to this general rule. *See Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir.1977). There are two considerations that support making such an exception in this case.

First, the present dispute bears a relatively minimal connection to Massachusetts as compared with Georgia. EMC's company headquarters are here, so employees and documents relating to EMC's investigation of Roland's claim are accordingly located in this district. Aside from that, it appears that most of the events relevant to the alleged sexual harassment occurred in Georgia. Wolak, a central actor in the events at issue, works in EMC's Georgia office. The various meetings and discussions between Wolak and Roland—during which the harassment is said to have happened—took place in Georgia. EMC's Human Resource Manager Paul Crivello met with Roland in Georgia to investigate her allegations. It appears, therefore, that most of the transactions related to this litigation occurred in Georgia.

■ Furthermore, it is a fair inference that EMC filed its suit in the hope of preempting Roland's expected choice of forum. As a result of Roland's January 26, 1995 letter, EMC was placed on notice of Roland's intent to file an action after she received a right-to-sue letter.[1] When that happened at the end of May, EMC knew that it was highly likely that Roland would bring

---

1. Following the receipt of a right-to-sue letter, a Title VII claimant has ninety days to bring a suit against the respondent named in the charge. *See* 42 U.S.C. § 2000e–5(f)(1).

suit in Georgia within ninety days. By filing this action in Massachusetts EMC hoped to win the choice of convenient forum. The effect of retaining this "first-filed" case here, despite the substantial contacts with Georgia, would be correspondingly to deprive Roland of her choice of forum even though she acted promptly to assert her rights by filing her complaint in the coercive action only twenty-nine days after receiving the right-to-sue letter. The Declaratory Judgment Act "was not designed to countenance such procedural manipulation of forums and actions." *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F.Supp. 581, 586 (S.D.N.Y.1990). Indeed, "the misuse of the Declaratory Judgment Act to gain procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action." *Federal Ins. Co. v. May Dep't. Stores Co.*, 808 F.Supp. 347, 350 (S.D.N.Y.1992).

Rejection of the first-filed rule in this case is consistent with the general principles of the Declaratory Judgment Act. A declaratory judgment action provides a party to a ripe legal controversy with an opportunity "to be free from the whim of its opponent in deciding when to resolve the legal dispute between them." *Great Am. Ins. Co.*, 735 F.Supp. at 585. In this case, Roland expressed her intention of filing an action in Georgia, and then did so promptly. The balance of equities tips decidedly in favor of dismissing this action in favor of the Georgia action. Roland's motion is ALLOWED, and this case is DISMISSED.

IT IS SO ORDERED.