# RESCRIPT OPINIONS.

G. Saif Sabree *vs.* Paul Conley & others.[1] No. 02-P-1267. September 27, 2004. *Civil Rights,* Coercion, Immunity of public official. *Search and Seizure,* Body examination. *Imprisonment,* Enforcement of discipline, Transfer of prisoner. *Constitutional Law,* Cruel and unusual punishment.

The plaintiff, G. Saif Sabree, a former inmate at MCI-Cedar Junction, filed suit, essentially alleging civil rights violations, against the Department of Correction and several correction officers for a visual body cavity search viewed by several prison visitors. The Superior Court granted the defendants' motion for summary judgment based, in part, on grounds of qualified immunity. We affirm.

On July 3, 1998, before returning to their housing units from the recreation yard, Sabree and numerous other male inmates were strip searched in groups of about three in an outside alcove walled on three sides with the fourth bounded by a chain link fence. Each search took three to five minutes, requiring that the inmate wiggle his toes and fingers, lift his tongue, spread his buttocks, and handle his genitals. A few women and children, leaving the prison, allegedly saw the inmates.[2] Sabree was not aware of a similar outdoor search conducted on any other occasion.[3]

Sabree, conceding that the search was justified by suspicion of contraband, claims that it was unduly invasive and violated the command of his religion for strict cross-gender modesty. Defendants state that the only alternate location, an interior corridor leading to Sabree's unit, was not suitable; its dimensions would have allowed only one search at a time, greatly delaying the process, and would have provided an insufficient area to safely conduct the search. Alternatively, Sabree alleges the search could have been moved to the nearby Health Services Unit (HSU).

Sabree's claim for damages under the State Civil Rights Act fails as he cannot show "threats, intimidation, or coercion" associated with the search. See *Longval* v. *Commissioner of Correction,* 404 Mass. 325, 333 (1989); *Abdullah* v. *Secretary of Pub. Safety,* 42 Mass. App. Ct. 387, 396-397 (1997). Cf. *Swain* v. *Spinney,* 117 F.3d 1, 12 (1st Cir. 1997) (use of strip search to punish

---

[1]John Padvaikas, Scott Galsband, and John Brodbeck.

[2]The guards, positioned with their backs to the chain link fence, could not see the visitors emerging from the prison.

[3]Departmental regulations stated: "Strip searches of individual inmates should be conducted in relative privacy . . . rendering as much dignity to the situation as possible. Strip searches by members of the opposite sex shall not be permitted except under extraordinary or emergency situations." 103 Department of Correction Regulations § 506.04(2)(A) (1997).

or intimidate would satisfy statute). Even if the manner of conducting the search was unreasonable, there is no evidence that it was conducted for an illegitimate or vindictive purpose. Cf. *Langton* v. *Secretary of Pub. Safety*, 37 Mass. App. Ct. 15, 20 (1994).

As to Sabree's claim under 42 U.S.C. § 1983 (2000), the defense of qualified immunity invokes a three-part inquiry: "first, whether a constitutional violation has been alleged if plaintiff['s] allegations are established as true; second, whether the law was clearly established at the time of the alleged violation; and last, whether a reasonable official, similarly situated would understand that the challenged conduct violated a constitutional norm." *Rivera-Jimenez* v. *Pierluisi*, 362 F.3d 87, 93 (1st Cir. 2004). See *Saucier* v. *Katz*, 533 U.S. 194, 201-202 (2001).

Strip searches conducted in nonprivate areas, viewed by nonessential persons (particularly of the opposite sex), violate the Fourth Amendment to the United States Constitution unless justified by legitimate penological interests.[4] See *Elliott* v. *Lynn*, 38 F.3d 188 (5th Cir. 1994), cert. denied, 514 U.S. 1117 (1995); *Cornwell* v. *Dahlberg*, 963 F.2d 912 (6th Cir. 1992); *Franklin* v. *Lockhart*, 883 F.2d 654 (8th Cir. 1989); *Michenfelder* v. *Sumner*, 860 F.2d 328 (9th Cir. 1988); *Hayes* v. *Marriott*, 70 F.3d 1144 (10th Cir. 1995); *Farmer* v. *Perrill*, 288 F.3d 1254 (10th Cir. 2002). These cases indicate that the search in question, if predictably vulnerable to viewing by visitors, would be unconstitutional if alternate locations or measures would have accommodated Sabree's rights at minimal cost to institutional security and would not have negated the search's purpose as, for example, if relocating to a more private area might allow inmates to pass off contraband. Factual disputes persist as to whether defendants unreasonably failed to secure the search against visual intrusion: the view from the pedestrian entrance; the likelihood that visitors would pass by; the feasibility of alternate locations (such as the HSU), as well as other methods to ensure greater privacy; and the efficacy of contacting the guards at the entrance.

Nevertheless, the defendants are entitled to immunity on the latter two prongs, as they were not on fair notice that the search violated the Fourth Amendment. See *Hope* v. *Pelzer*, 536 U.S. 730, 739-741 (2002). *Cookish* v. *Powell*, 945 F.2d 441, 447 (1st Cir. 1991), had summarized the case law as allowing "inadvertent, occasional, casual, and/or restricted" viewing of naked inmates by opposite sex guards as an accommodation to equal opportunity employment, and cases from the United States Court of Appeals for the First Circuit since *Cookish* had provided no further light on cross-sex viewing of naked inmates. The body of cases from other Federal circuits did not fill out the test outlined in *Turner* v. *Safley*, 482 U.S. 78, 89-90 (1987), in relation to similar facts and thus was insufficient to inform reasonable officials that their conduct was illegal. In sum, the defendants could have characterized any potential view of the searches as no more than "inadvertent, occasional, casual and/or restricted," and could have further found the small risk of such

---

[4]Courts generally consider the factors outlined in *Turner* v. *Safley*, 482 U.S. 78, 89-90 (1987), to differentiate infringements "reasonably related to legitimate penological interests" from those representing an "exaggerated response" to such concerns. The same standards apply to Sabree's claim under the free exercise clause of the First Amendment to the United States Constitution. See *O'Lone* v. *Estate of Shabazz*, 482 U.S. 342 (1987).

incidental viewing to be outweighed by the need for expediency. In view of the central objective of ensuring prison security, we are cautioned to remain mindful of "the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Cookish* v. *Powell, supra* at 449 n.11, quoting *Whitley* v. *Albers*, 475 U.S. 312, 320 (1986). Qualified immunity insulates reasonable errors of judgment, protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley* v. *Briggs*, 475 U.S. 335, 341 (1986). See, e.g., *Richardson* v. *McKnight*, 521 U.S. 399, 408 (1997); *Saucier* v. *Katz*, 533 U.S. at 201-202, 206. In addition, the violation of prison regulations does not by itself forfeit qualified immunity. See, e.g., *Davis* v. *Scherer*, 468 U.S. 183, 194 (1984).

Sabree's claims for injunctive and declaratory relief cannot proceed as he is no longer an inmate at the facility and the recreation yard search appears to have been an isolated incident.[5] See *Shaheed-Muhammad* v. *Dipaolo*, 138 F. Supp. 2d 99, 105-106 (D. Mass. 2001); *Seaver* v. *Manduco*, 178 F. Supp. 2d 30, 36 (D. Mass. 2002). See also *Boston Herald, Inc.* v. *Superior Ct. Dept. of the Trial Ct.*, 421 Mass. 502, 504 (1995); *Pidge* v. *Superintendent, Mass. Correctional Inst., Cedar Junction*, 32 Mass. App. Ct. 14, 19-20 (1992).

Likewise, the judge did not err in allowing summary judgment on the plaintiff's claims related to his transfer to a less desirable cell. On July 5, 1998, Sabree sent a grievance to the superintendent of the prison, complaining of the open nature of the search. Sabree alleged harassment due to his race, religion, and recent prisoner litigation. The superintendent replied, on July 17, 1998, that all of the inmates in the yard had been searched. On or about July 24, 1998, Paul Conley, one of the guards who conducted the search, ordered Sabree moved from his cell on the first tier to a cell on the second tier. Sabree remained in the new cell, which he claims to have been in disrepair, for twenty-three hours per day for one to two weeks. It is not contested that inmates on the first tier were routinely moved to accommodate those with medical needs. However, Sabree asserted "personal knowledge" that Conley departed from unwritten seniority procedures regarding placement in cells on the first tier. Conley denied any seniority policy, as such a policy would "create expectations" and cause "complaints and tensions" where deviations were necessary. Conley cited several factors generally used to place inmates and denied retaliation.

The defendants do not contest that Sabree had a right under the First Amendment to the United States Constitution to file a grievance and that Conley could not retaliate against him for doing so. See, e.g., *Shabazz* v. *Cole*, 69 F. Supp. 2d 177, 197 (D. Mass. 1999); *Langton* v. *Secretary of Pub. Safety*, 37 Mass. App. Ct. at 18-20; *Murphy* v. *Cruz*, 52 Mass. App. Ct. 314, 319 (2001). Nevertheless, the judge correctly allowed the defendants' motion for summary judgment, as the record raised no inference of retaliatory motive. See *Messere*

---

[5]Insofar as Sabree's claim pursuant to the Eighth Amendment to the United States Constitution related to the strip search is susceptible to independent analysis, he is unable to show "the unnecessary and wanton infliction of pain," unrelated to prison needs. *Whitley* v. *Albers*, 475 U.S. 312, 319-320 (1986). See *Del Raine* v. *Williford*, 32 F.3d 1024, 1040 (7th Cir. 1994). The due process clause also fails to provide greater protection. See *Fernandez* v. *Rapone*, 926 F. Supp. 255, 262-263 (D. Mass. 1996). See also *Oliver* v. *Scott*, 276 F.3d 736, 744-745 & n.11 (5th Cir. 2002).

v. *Commissioner of Correction*, 27 Mass. App. Ct. 542, 548-549 (1989); *Puleio* v. *Commissioner of Correction*, 52 Mass. App. Ct. 302, 313 (2001). While the chronology of events can in some circumstances defeat a motion to dismiss, it cannot create a triable issue when the defendants have produced evidence of a legitimate purpose that would have prompted the transfer in the absence of the grievance. See *Layne* v. *Vinzant*, 657 F.2d 468, 476 (1st Cir. 1981); *Shabazz* v. *Cole*, 69 F. Supp. 2d at 197-198; *Murphy* v. *Cruz*, 52 Mass. App. Ct. at 317-318. Sabree's bare allegations do not show a reasonable expectation of proving a rigid seniority system for assigning cells. Cf. *Powell* v. *Pittsfield*, 221 F. Supp. 2d 119, 141-143 (D. Mass. 2002). Sabree did not rely upon or support his claim of ongoing retaliation. Cf. *Ferranti* v. *Moran*, 618 F.2d 888, 892 (1st Cir. 1980).

Sabree also raised a "conditions of confinement" claim pursuant to the Eighth Amendment to the United States Constitution. See *Farmer* v. *Brennan*, 511 U.S. 825, 832-833 (1994). Sabree must show (1) conditions "sufficiently serious" as to "result in the denial of the 'minimal civilized measure of life's necessities,' " *id.* at 834, quoting from *Rhodes* v. *Chapman*, 452 U.S. 337, 347 (1981), and (2) that the defendants acted with "deliberate indifference" to his health or safety. *Farmer* v. *Brennan*, 511 U.S. at 834. That test does not create a constitutional right to stainless steel facilities or spotless, odor-free cells. While a lack of basic sanitation and hygiene may satisfy this test, see, e.g., *Masonoff* v. *DuBois*, 899 F. Supp. 782, 788-789 (D. Mass. 1995), Sabree did not claim that his toilet and sink were inoperable, but only that they were rusted and "bacteria-laden" and that his cell smelled of human waste. Contrast, e.g., *Michaud* v. *Sheriff of Essex County*, 390 Mass. 523 (1983). Nor did Sabree make out, by his conclusory allegations, violations of health and safety regulations he cited (105 Code Mass. Regs. §§ 451.117, 451.123, 451.130 [1999]), which would not in any event make out a private cause of action against prison officials. See *id.* at 526; *Hudson* v. *Commissioner of Correction*, 46 Mass. App. Ct. 538, 548 n.18 (1999). Given that the plaintiff's brief stay in the allegedly offending cell ended long ago, the judge properly treated the claim as moot.

*Judgment affirmed.*

The case was submitted on briefs.

*Nancy Ankers White*, Special Assistant Attorney General, *& Richard C. McFarland* for the defendants.

*G. Saif Sabree*, pro se.