# United States Court of Appeals
## For the First Circuit

Nos. 00-1398
    00-1660

JOHN P. HAWKINS,

Plaintiff, Appellant,

v.

RHODE ISLAND LOTTERY COMMISSION;
LINCOLN ALMOND, GOVERNOR; PAUL S. KELLY, SENATOR;
JOHN B. HARWOOD, REPRESENTATIVE; DONALD W. WYATT, MEMBER,
RHODE ISLAND LOTTERY COMMISSION; CHRISTINE H. CALLAHAN,
MEMBER, RHODE ISLAND LOTTERY COMMISSION; MICHAEL R. DEBATT,
MEMBER,
RHODE ISLAND LOTTERY COMMISSION; DOMENIC A. DISANDRO, III,
MEMBER, RHODE ISLAND LOTTERY COMMISSION; FRANK A. MONTANARO,
MEMBER, RHODE ISLAND LOTTERY COMMISSION; EDWARD J. LAWRENCE,
MEMBER, RHODE ISLAND LOTTERY COMMISSION; ROBERT E. FLAHERTY,
MEMBER, RHODE ISLAND LOTTERY COMMISSION; ROBERT L. CARL, IN
HIS CAPACITY AS DIRECTOR OF THE RHODE ISLAND DEPARTMENT OF
ADMINISTRATION; RHODE ISLAND PERSONNEL APPEALS BOARD; MORRIS
WEINTRAUB, CHAIRPERSON, PERSONNEL APPEALS BOARD; WILLIAM
PEARSON, VICE CHAIRPERSON, PERSONNEL APPEALS BOARD; AND DIANE
MOONEY, MEMBER, PERSONAL APPEALS BOARD,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin and Bownes, Senior Circuit Judges.

Keven A. McKenna for appellant.

Stephen A. Izzi, with whom William P. Devereaux was on brief, for appellees Rhode Island Lottery Commission, Donald W. Wyatt, Christine H. Callahan, Michael R. Debatt, Domenic A. Disandro, III, Frank A. Montanaro, Edward J. Lawrence and Robert E. Flaherty.

Claire Richards, Deputy Executive Counsel, with whom Joseph S. Larisa Jr. was on brief, for appellees Lincoln Almond and Robert L. Carl.

John A. Tarantino, with whom Patricia K. Rocha and Joseph Avanzato were on brief, for appellee John B. Harwood.

Joseph J. McGair for appellee Paul S. Kelly.

**COFFIN, <u>Senior Circuit Judge</u>.** Appellant John P. Hawkins was terminated by the Rhode Island Lottery Commission from his position as its director after a flurry of negative publicity in which his conduct in office was criticized, primarily by the state's governor, defendant Lincoln Almond. Hawkins claims that the discharge violated a variety of state and federal laws, and he filed this lawsuit against Almond and a number of other state officials seeking a hearing, damages and reinstatement. The district court, in a lengthy and thoughtful opinion, rejected all of his claims. We agree with its result and, for most of the claims, adopt its reasoning without further discussion. On two issues, we add brief analysis of our own. We also affirm the district court's award of attorney's fees to defendants. Although we do not grant defendants' request for fees on appeal, we assess double costs because of appellant's prolix and consequently burdensome briefing, particularly on unworthy state law issues.[1]

---

[1]We note that all of appellant's claims in this case, with the exception of an age discrimination cause of action, previously were brought in state court. Hawkins filed the federal case after the state court denied his request for injunctive relief, ruling that most of the claims failed as a matter of law. The state court subsequently granted summary judgment for defendants on all but a Rhode Island Open Meetings Act claim that is not before this court.

(1) <u>Violation of Rhode Island Merit System Act.</u> Appellant argues that he was entitled to tenure protection and thus a pretermination hearing because he had served enough time in state government to qualify for statutory "full status" and had received two certificates attesting to that status. <u>See</u> R.I. Gen. Laws § 36-4-59(a). He maintains that the exception to the tenure provision, which excludes employees whose "method of appointment and salary and term of office is specified by statute," <u>id.</u> at 36-4-59(a)(2)(iii), is inapplicable to him because the statute creating the Lottery Director position is not sufficiently specific on those matters. Rather than setting a precise term of office or salary, the provision states that

> [t]he director . . . shall serve at the pleasure of
> the commission. . . . He or she shall receive such
> salary as the commission shall determine and shall be
> in the unclassified service.

R.I. Gen. Laws § 42-61-3.

Our reading of the pertinent Rhode Island precedent, however, persuades us that an at-will term of employment designated by statute will prevail, no less than a precisely defined term of years, over the general tenure provision protecting long-term unclassified employees. In <u>Donnelly</u> v. <u>Almond</u>, 695 A.2d 1007, 1008-09 (R.I. 1997), the Rhode Island Supreme Court considered the wrongful-discharge claims of a chief deputy sheriff who contended that his position did not

-5-

have a term of office or a salary specified by statute. The statutory provisions at issue there, R.I. Gen. Laws §§ 42-29-4, 42-29-9, provide that the chief deputy sheriff is appointed by the sheriff, who "may revoke any deputation by him or her given." Another provision states that, in the case of a sheriff's death, his or her deputies shall remain in office until another sheriff is appointed and sworn. Id. at § 42-29-27. The court concluded that these provisions sufficed to establish a statutory term of office exempting a chief deputy sheriff from the tenure protection, even though they "do not expressly fix a chief deputy sheriff's term of office," Donnelly, 695 A.2d at 1009.

This case differs somewhat from Donnelly in that the deputy sheriff's term was linked to the sheriff's term of office, which is specifically set by statute at ten years, see R.I. Gen. Laws § 42-29-1, while no such outer boundary exists in this case. That factor, however, appeared to play no role in the Supreme Court's decision; the court focused not on the particulars of the sheriff's term but on the fact that multiple statutory provisions addressed the chief deputy sheriff's tenure, including one providing for revocation at will by the sheriff. It is evident that the Rhode Island court has construed the exception to the general tenure provision as excluding any

unclassified employee whose term of office is addressed in another statute, whether or not that term was defined by a specified number of years or in some other way. The statutory tenure protection is awarded to unclassified employees whose longevity gives them the benefit their status did not, but it cannot be awarded to those whose tenure is specifically limited by statute. See id. at 1009; Casey v. Sundlun, 615 A.2d 481, 483 (R.I. 1992) ("special" provisions prevail over general provisions).[2]

(2) 42 U.S.C. § 1983: Stigma-plus. Appellant argues that defamation by the defendants, together with his termination, constituted the "stigma plus" injury that is necessary to establish a claim for deprivation of liberty in violation of the Due Process Clause of the Fourteenth Amendment. See Siegert v. Gilley, 500 U.S. 226, 233-34 (1991); Aversa v. United States, 99 F.3d 1200, 1215-16 (1st Cir. 1996). The district court rejected this claim on the ground that the defamation and the termination were not coincident; some of the defendants lacked authority to terminate appellant while others, so far as the record showed, uttered no defamatory statements. The court relied on case law,

---

[2] Appellant argues that the statute providing tenure protection is the exception to the general scheme of at-will employment for unclassified employees and that it therefore must be given effect. The "exception" provision itself has an exception, however, and the most specific statute must prevail.

-7-

from the United States Supreme Court and this court, holding that "the defamation had to occur in the course of the termination of employment," Paul v. Davis, 424 U.S. 693, 710 (1976); see also Pendleton v. City of Haverhill, 156 F.3d 57, 63 (1st Cir. 1998) ("[T]o achieve a sufficient 'plus' in a loss-of-job context, words spoken must be 'uttered incident to the termination.'" (quoting Siegert, 500 U.S. at 234)); Silva v. Worden, 130 F.3d 26, 32-33 (1st Cir. 1997) ("[T]he municipality terminating the employee must also be responsible for the dissemination of defamatory charges . . . ."); Aversa, 99 F.3d at 1216 (plaintiff must allege that "the loss of employment resulted from some further action by the defendant in addition to the defamation").

Appellant argues that the district court erred in viewing the defamation and termination separately, and he asserts that the actions of the various defendants taken together satisfy the requirement of "stigma plus." He relies on the close relationship between, on the one hand, the governor and defendants Harwood and Kelly — the speaker of the state house of representatives and the senate majority leader, respectively — and, on the other hand, the Lottery Commission. The Commission is comprised of nine members, three of whom are appointed by

each of those three political leaders.[3]  Appellant alleges that
Governor Almond, Speaker Harwood and Senator Kelly orchestrated
the termination through their "surrogates" on the Commission,
and, particularly in the case of Almond, also were responsible
for defamatory communications about him.  He also relies on Owen
v. City of Independence, 445 U.S. 622 (1980), in which the
Supreme Court allowed a stigma-plus claim even though different
parties were responsible for the defamation and termination at
issue.[4]

   Hawkins' effort to build a stigma-plus claim from the record
in this case falls short of the mark, however.  The facts before
us are unlike Owen, where the defendant at issue was not an
individual, but the city, and all of the challenged conduct was
that of city officials acting in their official capacity.  As a
result of their collective actions of defamation and
termination, the Supreme Court said the city could be held

_____

   [3] The senate leader appoints three senate members to the
Commission, only two of whom may belong to the same political
party; the house leader appoints three house members with the
same party limitation, and the governor appoints three members
of the general public.  See R.I. Gen. Laws § 42-61-1.

   [4]In Owen, the plaintiff was discharged by the city manager
and the city council issued a resolution that contained an
allegedly false statement impugning the plaintiff's honesty and
integrity.  See 445 U.S. at 628-29 & n.13.

responsible for a deprivation of liberty without due process. Id. at 627-29, 633 n.13.

Here, though the defendants are all representatives of the state, the state is not a party.[5] The only specific allegations of defamation refer to statements by the governor, while the termination was at the will of the Lottery Commission, which by law is fiscally and operationally autonomous. See R.I. ACLU v. Rhode Island Lottery Comm'n, 553 F. Supp. 752, 765 (D.R.I. 1982). The tripartite division of appointing authority highlights the Commission's independence from any single political influence. See R.I. Gen. Laws § 42-61-1.[6] Although the governor's rhetoric may have created a political climate antithetic to Hawkins that affected the Commission's deliberations, the governor neither spoke for the Commission nor controlled its actions.[7] Particularly where, as here, the

---

[5] The state, of course, could not be sued directly under section 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). The only defendant sued in his official capacity was Robert L. Carl, Director of the Department of Administration, but neither the defamation nor termination was attributed to him. His official status therefore does not impact this cause of action. See id. at 71 n.10 (injunctive relief may be sought under 42 U.S.C. § 1983 in a suit against a state official acting in his official capacity).

[6] We note that Governor Almond is a Republican; Speaker Howard and Senator Kelly are Democrats.

[7] The governor publicly claimed a significant role in ousting Hawkins, but the record is clear that he had no actual

alleged defamation occurs in the context of a public clash between political opponents,[8] we are disinclined to exceed the established limits of constitutional claims of reputation injury.  In this case, the party responsible for the alleged defamation was not the party responsible for the termination.

authority to accomplish that objective.  Indeed, a press release issued by the governor in December 1995 underscores his lack of control over the Commission: the statement announced that he would pursue legislation to abolish the Lottery Commission because "[t]here is absolutely no need for the Lottery Commission to be an independent quasi-public agency."

[8] The political setting makes it likely that the allegations against Hawkins would be viewed as "politics as usual," diminishing any stigma associated with his termination.  From all that appears, in fact, the Commission's unexplained decision to terminate Hawkins  resulted from the commissioners' desire to end a political storm rather than from a judgment on Hawkins' abilities.  In a press release issued a few days before the termination, the three Senate members of the Lottery Commission and Senate Majority Leader Kelly were quoted as saying that "'it is time to move forward and select a new Lottery Director.'" The release, as quoted in a Hawkins affidavit, see App. at 328-29, continued:

> "The Senators said the continuous controversy surrounding current Executive Director, John Hawkins[,] is threatening the credibility of the State Lottery and was diverting law makers' attention from more pressing state problems."

See also App. at 331 (newspaper article in which Kelly is quoted as telling Hawkins that "'everything the lottery does is getting blurred because of the controversy surrounding the director'").

-11-

We thus conclude, like the district court, that Hawkins has failed to state a viable due process claim.[9]

Finally, we affirm the district court's decision to award attorney's fees to certain defendants. Such an award is appropriate when a court finds that "the plaintiff's action was frivolous, unreasonable, or without foundation." Tang v. State of Rhode Island Dep't of Elderly Affairs, 163 F.3d 7, 14 (1st Cir. 1998) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978)). This lawsuit was Hawkins' second effort to recover for essentially the same claims, and we cannot find that the court abused its discretion in concluding that Hawkins' lack of success in state court should have alerted him to the legal flaws in his claims and restrained him from exposing defendants to repetitive litigation. As for the amount of fees awarded, the district court's opinion reflected correct application of the law and a careful, discriminating scrutiny of the attorneys' time records. It adopted a reasonable hourly rate, based on its knowledge of the relevant market, and excised hours that were

---

[9] Hawkins' reliance on Colaizzi v. Walker, 542 F.2d 969 (7th Cir. 1976), is also misplaced. In Colaizzi, the defendant governor discharged the plaintiffs and "simultaneously issued or caused to be issued certain press releases" charging the plaintiffs with "reprehensible conduct," id. at 971, 972. Unlike Governor Almond, Governor Walker was directly responsible for both the termination and the alleged defamatory communication.

duplicative or otherwise not compensable.  The court rejected

entirely defendant Almond's request for fees.  We see no error

in these judgments.

Affirmed.  Double costs on appeal to appellees.