# United States Court of Appeals
## For the First Circuit

No. 10-1209

URI STUDENT SENATE ET AL.,

Plaintiffs, Appellants,

v.

TOWN OF NARRAGANSETT ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Thompson, Circuit Judges.

H. Jefferson Melish for appellants.
Marc DeSisto, with whom Mark A. McSally, Town Solicitor, Kelly, Kelleher, Reilly & Simpson, and DeSisto Law were on brief, for appellees.

January 5, 2011

**SELYA**, **Circuit Judge**.  The town of Narragansett (the Town), a sleepy seaside community in southern Rhode Island, boasts some of the most beautiful beaches on the eastern seaboard.  Each summer, the Town experiences a substantial influx of seasonal residents.  Each fall, the Town empties out, leaving a large number of dwellings unoccupied.  The Town's proximity to the University of Rhode Island (URI) makes these dwellings attractive for student housing.

This thriving rental market among college students has proven to be both a blessing and a curse.  On the one hand, the clamor for student housing is an economic boon to property owners willing to rent their dwellings.  On the other hand, the sheer mass of exuberant young people and their predilections have proven to be a threat to the quality of life in a quiet enclave.

In an effort to balance these competing concerns, the Town adopted a novel ordinance authorizing local police officers to post a bright orange sticker at the front entrance of any residence found to have hosted an "unruly gathering."  The ordinance has had its detractors, and this case was brought as a multifaceted challenge to it.  The challengers complain that the ordinance is both preempted by state law and unconstitutional on its face.

The district court, in a thoughtful and comprehensive rescript, rejected these plaints.  See URI Student Senate v. Town of Narragansett, 707 F. Supp. 2d 282 (D.R.I. 2010).  After careful

consideration, we find that the Town's unorthodox solution to the problems caused by unruly gatherings does not, on its face, offend either state law or the United States Constitution. Accordingly, we affirm.

## I.  BACKGROUND

We first recount the circumstances surrounding the adoption of the ordinance and summarize its terms. We then limn the travel of the case.

### A.  The Ordinance.

The Narragansett Town Council initially adopted an "unruly gatherings" ordinance in 2005. It amended that ordinance in 2007. The amended version (the Ordinance), codified at chapter 46, article II, of the Town's Code of Ordinances, remains in force. We refer throughout to that version, which is reprinted in the appendix.

Section 46-31 of the Ordinance empowers local police officers to intervene at and disperse gatherings that are sparking "a substantial disturbance." The police may only do so, however, when the disturbance involves "a violation of law." Subsection (a) provides an illustrative list of instances of unlawful conduct that might constitute such a violation (e.g., excessive noise, obstruction of public streets, illegal parking, public drunkenness or urination, service of alcohol to minors).

-3-

Once the police have abated and dispersed an unruly gathering, subsection 46-32(a) authorizes them to prominently post a notice on the premises. This notice takes the form of a bright orange ten-by-fourteen-inch sticker, which is affixed on or near the front entrance of the building.[1] The sticker contains an explicit message. It admonishes that, should police intervention be required in response to another violation at the same address during the same posting period, various parties (e.g., the owners and residents of the premises, the sponsors of the unruly gathering, and any guests who cause a nuisance) will be held jointly and severally liable. Landlords are informed by mail of both the posting and the violation that led to it.

The Ordinance makes explicit allowance for certain defenses to prosecution for a subsequent violation. For example, under subsection 46-34(a)(5), a showing that only uninvited participants engaged in the proscribed conduct serves as a defense for innocent landlords, tenants, or event sponsors. To assert this defense, a landlord, tenant, or sponsor must show that she took "all steps reasonably necessary to exclude" the responsible

---

[1] The record does not explain why the color orange was selected. Thus, like Nathaniel Hawthorne reflecting on a similar conundrum, one wonders if there is "some deep meaning in it, most worthy of interpretation, and which, as it were, streamed forth from the mystic symbol, subtly communicating itself to [one's] sensibilities, but evading the analysis of [one's] mind." Nathaniel Hawthorne, The Scarlet Letter, intro. (1850). In the end, however, the choice of hue, though perplexing, is not relevant to the issues on appeal.

individuals.  As to landlords, such exclusionary actions include "actively attempting" to evict boisterous tenants.

The posting periods prescribed by subsection 46-32(a) correspond with the economic realities of the seasonal housing cycle.  If a building is posted between the beginning of September and the end of May, the sticker must remain in place until May 31.  If a building is posted between the beginning of June and the end of August, the sticker must remain in place until August 31.

Under subsection 46-32(b), landlords and tenants are jointly responsible for maintaining the notice in place.  If a landlord or tenant removes the sticker, abets its removal, or tampers with it during the posting period, she is subject to a fine.

Section 46-35 delineates the penalties associated with infractions at previously posted dwellings.  Under subsection (a), the first post-posting intervention during a given posting period incurs a $300 fine; the second, a $400 fine; and any further intervention, a $500 fine.  Under subsection (b), violators may be required to perform community service or, for repeat offenders, community service is mandatory.

The Town routinely compiles statistics relating to its enforcement of the Ordinance.  Its roster of offending dwellings includes all addresses at which police officers have intervened to abate and disperse unruly gatherings.  It also maintains a list

that features data relating to Ordinance violations committed by URI students.

## B. **Travel of the Case**.

In May of 2008, the appellants challenged the Ordinance in a Rhode Island court. The defendants removed the case to the district court in pursuance of federal question jurisdiction. See 28 U.S.C. §§ 1331, 1441.

The lead plaintiff-appellant is the URI Student Senate, which claims to represent the interests of URI students generally. The remaining plaintiffs, also appellants here, can be sorted into three categories. The first group comprises individual URI students who reside in Narragansett and have felt the sting of the Ordinance. These appellants claim, among other things, that they have been subjected to university disciplinary procedures as a result of violating the Ordinance.[2] The second group consists of URI students whose rented abodes have been posted with orange stickers. These appellants claim that they were evicted from their homes and referred to the URI Student Life Office as a result. The last group comprises landlords who have had their rental properties posted. These appellants claim that they have been unable to re-rent their properties and, consequently, have lost rental income.

---

[2] Criminal prosecution of those individuals for subsequent violations was underway in municipal court prior to the commencement of this suit. These proceedings have been held in abeyance.

-6-

The defendants, appellees here, are the Town and a galaxy of municipal officials. For ease in exposition, we refer to the Town as if it were the sole defendant.

The complaint is cast mostly, but not entirely, as a series of constitutional challenges. The exception is a preemption claim positing that the Ordinance is preempted by a state statute. The constitutional claims allege variously that the Ordinance (i) violates substantive due process, (ii) is unconstitutionally vague, (iii) is overbroad, (iv) offends the requirements of procedural due process, and (v) deprives the appellants of equal protection of the law.

In due season, the parties cross-moved for summary judgment on stipulated facts. The district court denied the appellants' motion and granted the cross-motion. URI Student Senate, 707 F. Supp. 2d at 304. The court expressed concern about the absence of any pre-posting opportunity to challenge the orange stickers, id. at 296, 302, but nonetheless upheld the Ordinance. This timely appeal ensued.

## II. ANALYSIS

We begin our analysis with the preemption claim and then move to the constitutional claims. Before undertaking this exegesis, we pause to memorialize the standard of review.

We review an appeal from the entry of summary judgment de novo. Osediacz v. City of Cranston, 414 F.3d 136, 139 (1st Cir.

-7-

2005).  In so doing, we take the facts and all reasonable inferences therefrom in the light most hospitable to the nonmoving party.  Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010).  "We will affirm only if the record reveals 'no genuine issue as to any material fact' and 'the movant is entitled to judgment as a matter of law.'"  Vineberg v. Bissonnette, 548 F.3d 50, 55 (1st Cir. 2008) (quoting Fed. R. Civ. P. 56(c)(2)).

## A.  Preemption.

The appellants assert that the Ordinance is preempted by the Rhode Island Residential Landlord and Tenant Act (L&T Act), R.I. Gen. Laws §§ 34-18-1 to 34-18-57.  As its title implies, the L&T Act speaks to the rights and obligations of landlords and tenants within Rhode Island.  See id. §§ 34-18-2, 34-18-7.  In advocating preemption, the appellants rely on section 34-18-36, which gives most tenants the right to cure any material breach of a rental agreement prior to eviction.[3]

Under Rhode Island law, a municipal ordinance may be preempted by a state statutory scheme either if the ordinance conflicts with the statutory scheme or if it can be shown that the General Assembly intended its statutory scheme to occupy the whole of the regulatory field in connection with a given subject.

---

[3] The L&T Act makes separate provisions for what it calls "seasonal" tenants.  See R.I. Gen. Laws § 34-18-36(f).  The case at hand does not turn on any such distinction and, thus, we refer to tenants generally.

Amico's Inc. v. Mattos, 789 A.2d 899, 907 (R.I. 2002); Town of Warren v. Thornton-Whitehouse, 740 A.2d 1255, 1261 (R.I. 1999). The appellants' preemption argument rests on the first of these lines of attack: the supposed existence of a conflict between the Ordinance and the L&T Act.[4]

The appellants contend that the Ordinance conflicts with section 34-18-36 of the L&T Act because it "requires" a landlord to evict an offending tenant without providing the tenant with an opportunity to cure. Eviction is required, the appellants say, so that the landlord can avoid liability for subsequent Ordinance violations at posted properties.

This argument represents a triumph of hope over reason. The Ordinance does not require a landlord to initiate eviction proceedings against an offending tenant. Rather, section 46-34(a)(5) explains that the owner of a previously posted property may avoid liability for a subsequent unruly gathering at that location as long as the owner is "actively attempting to evict a tenant from the premises." Affording the landlord an "ongoing eviction" defense is not tantamount, either legally or practically, to compelling him to institute eviction proceedings.

---

[4] In their opening brief, the appellants make a passing reference to section 34-18-7 as a possible source of field preemption. This reference is not developed in any way and, thus, no field preemption argument is properly before us. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

-9-

The appellants try to dodge this bullet. They note that, under the L&T Act, the first step in evicting a tenant is the issuance of a noncompliance notice. R.I. Gen. Laws § 34-18-36. The appellants declare that this provision grounds a preemption claim because sending a notice of noncompliance is antithetic to an active attempt at eviction.

This ipse dixit is not accompanied by any explanation as to why or how the transmittal of a notice of noncompliance interferes with, let alone negates, the active pursuit of eviction. Bearing in mind that sending such a notice is the first step in the eviction pavane, the two acts seem entirely compatible. Certainly, there is nothing in either the text of the Ordinance or the letter of the L&T Act that precludes simultaneous compliance with both.

In all events, conflict preemption requires a direct conflict or something very close to it. See, e.g., Freightliner Corp. v. Myrick, 514 U.S. 280, 287 (1995) (explaining that implied conflict preemption may exist where it is "impossible for a . . . party to comply with both . . . requirements" or where a provision "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of the legislature (quotations omitted)). An awkward fit, without more, will not support a claim of conflict preemption.

In the instant case, we are unable to discern either a direct conflict or an irreconcilable inconsistency between the

provisions of the Ordinance and the provisions of the L&T Act.  We therefore hold, without serious question, that the L&T Act does not preempt the Ordinance.

### B.  Constitutional Claims.

The appellants advance a compendium of constitutional challenges to the Ordinance.  Because they have not pressed either their generalized substantive due process or equal protection claims, we eschew any further discussion of those initiatives. Without exception, what remains are facial challenges.[5]

**1.  Procedural Due Process.**  We start with the contention that the Ordinance deprives both landlords and tenants of procedural due process.  The appellants pounce on the fact that the Ordinance allows the police to plaster an orange sticker on a dwelling without affording either the landlord or the tenants any opportunity for a hearing.[6]

---

[5] At oral argument, the appellants stated that they were making both facial and as-applied challenges.  The record belies that statement.  Although their brief characterizes the complaint as contesting the Ordinance "on its face and as applied," the appellants argued the case in the district court as a facial challenge and the district court decided it on that basis. See URI Student Senate, 707 F. Supp. 2d at 288.  That approach was unavoidable as the appellants failed to introduce any evidence sufficient to underpin an as-applied challenge.

[6] No specific claim is made in this case that persons exonerated from charges brought under the Ordinance have been unable either to get the orange stickers removed from their residences or to have their names and addresses expunged from the rosters of offenders and offending sites. Cf. Los Angeles Cnty. v. Humphries, 562 U.S. ___, slip op. at 2 (2010) (addressing 42 U.S.C. § 1983 claim brought by plaintiffs who were accused of child abuse,

It is familiar lore that the essence of procedural due process is prior notice and an opportunity to be heard. <u>Bd. of Regents</u> v. <u>Roth</u>, 408 U.S. 564, 573 (1972). But this principle does not operate in a vacuum. In order to show a deprivation of procedural due process, a party must first show that the challenged action implicates a constitutionally protected liberty or property interest. <u>Id.</u> at 569-70; <u>Redondo-Borges</u> v. <u>U.S. Dep't of HUD</u>, 421 F.3d 1, 7 (1st Cir. 2005); <u>see</u> <u>also</u> U.S. Const. amend. XIV, § 1.

In an effort to cross this threshold, the appellants focus on reputational harm, that is, the allegedly stigmatizing effects of the Ordinance. They say that when a residence is posted with an orange sticker, both the landlord and the tenants are publicly branded as criminals. They add that this stigma is heightened by the Town's action in keeping a publicly available register of all posted premises.

Student tenants are alleged to suffer a further detriment. When an orange sticker is posted on premises occupied by a university student, the Town informs URI. In the appellants' view, this additional step exposes student tenants to disciplinary proceedings and exacerbates the stigmatizing effect of the postings.

---

later exonerated, yet were unable to convince relevant officials to remove their names from a widely available central index).

This argument cannot withstand scrutiny. In constitutional jurisprudence, stigmatization is a term of art. The Supreme Court has made clear that a procedural due process claim cannot rest upon reputational harm alone. Paul v. Davis, 424 U.S. 693, 701 (1976). Thus, when a person alleges that she has suffered stigmatization at the hands of a government actor, she must show an adverse effect on some interest "more tangible" than reputational harm. Id. To use the popular catch phrase, the complaining party must satisfy a "stigma plus" standard. Pendleton v. City of Haverhill, 156 F.3d 57, 63 (1st Cir. 1998).

The "plus" part of this formulation is not an empty formality. In determining whether there exists a cognizable harm, the stigma plus standard requires us to address two distinct components: (i) the nature of the incremental harm to which the appellants point and (ii) the source of that harm.

A party who claims a violation of her procedural due process rights based on reputational harm must show that the challenged governmental action adversely impacted some right or status previously enjoyed by her under substantive state or federal law. See Paul, 424 U.S. at 710-12; Silva v. Worden, 130 F.3d 26, 32 (1st Cir. 1997). For this purpose, harm to a right or status that does not emanate from substantive state or federal law is insufficient. Such harm thus does not qualify as harm to a more

tangible interest within the purview of the stigma plus standard. See Pendleton, 156 F.3d at 63.

The nature of the affected interest is not the only hurdle that a complaining party must overcome in order to satisfy the stigma plus standard. The standard requires that the change in rights or status be directly attributable to the challenged governmental action. Id. Where the stigma and the incremental harm — the "plus" factor — derive from distinct sources, a party cannot make out a viable procedural due process claim. See, e.g., Hawkins v. R.I. Lottery Comm'n, 238 F.3d 112, 116 (1st Cir. 2001). That is true even if both sources are government entities. See id.

The appellants acknowledge that a showing beyond purely reputational harm is required by the stigma plus standard. To meet that requirement, they describe two injuries that they claim result from the postings.[7]

First, the appellants aver that the L&T Act provides them with rights "to housing, to cure breaches, to notice, [and] to possession." Second, they tout the "right to rent and live in Narragansett free of public branding." These rights, they insist, implicate protected liberty and property interests, and the infringement of them suffices to trigger the stigma plus standard.

_____

[7] In their discussion of procedural due process, the appellants repeatedly mention that a posting under the Ordinance exposes them to prosecution and fines. But they neither present this exposure as a "plus" factor nor otherwise tie it to any specific legal doctrine.

There is, however, no cognizable harm. The appellants say that some landlords have been unable to re-rent posted dwellings. Taking this as true, the resulting loss of rent is not a viable "plus" factor. Nothing in the L&T Act (or elsewhere in state law, for that matter) confers on landlords an entitlement to have rental units fully occupied. Rather, the L&T Act for the most part leaves the negotiation of leases and rates to the marketplace — that is, to the landlord and each prospective tenant. See R.I. Gen. Laws § 34-18-15(a). This framework plainly contemplates that rental income is contingent on the availability of willing renters. Viewed against this backdrop, it cannot seriously be suggested that state law creates an entitlement to a steady stream of rental income that would qualify as a "more tangible" interest (and, thus, as a "plus" factor).

Similarly, the vacancies that the appellants lament do not result from state action but, rather, from the actions of third parties. After all, it is prospective tenants, acting without government compulsion, who decide whether or not to rent particular dwellings. A prospective tenant can base her decision not to rent on a multitude of factors including cost, location, amenities, and condition. There is nothing that prevents her, as a private party, from weighing in this balance the presence of an orange sticker. These third-party decisions are not attributable to state action in the requisite sense. See Lugar v. Edmondson Oil Co., 457 U.S. 922,

-15-

937-39 (1982) (describing circumstances in which private party's actions may be considered "fairly attributable" to the state); Logiodice v. Trs. of Me. Cent. Inst., 296 F.3d 22, 26 (1st Cir. 2002) (similar). When a specified harm is predicated on voluntary third-party behavior, it cannot serve as a "plus" factor. Pendleton, 156 F.3d at 63.

The student tenants' proposed "plus" factor is no more robust. This claim relies on evictions as a source of harm. It suggests that a tenant has a right to peaceable enjoyment of a rented dwelling free from eviction and that, therefore, eviction represents a cognizable "plus" factor. This is too sanguine a view.

The student tenants' claim is defeated by the fact that their residential rights derive primarily from private contracts (leases) between private parties (landlords and tenants), which entail private obligations. The L&T Act does not itself create a right to tenancies of any particular duration. In the last analysis, it is the lease terms (and the tenant's compliance with them) that generally determine the tenant's right to remain in a rented dwelling.[8] That is dispositive because a constitutionally

_____

[8] Of course, under the L&T Act a tenant "charged with violating a municipal ordinance" may be subject to an expedited eviction. R.I. Gen. Laws § 34-18-36(f). Although this provision may constitute a basis, beyond the explicit terms of the lease, for terminating a tenancy more quickly, it does not create a property interest outside of the lease.

-16-

protected property interest must rest on a right or status conferred by state law, not merely on the complaining party's unilateral expectations. See Paul, 424 U.S. at 710-11; Roth, 408 U.S. at 577.

Of course, we recognize that there are situations in which the Ordinance might be enforced in such a way as to implicate the legitimate, constitutionally protectable property rights of affected landlords and tenants. The record in this case, however, does not contain any indication that such events have transpired. Though we conclude that, on the record before us, the appellants have failed to show that enforcement of the Ordinance has resulted in harm to a cognizable liberty or property interest, this conclusion does not preclude the possibility of a meritorious as-applied challenge premised on more fully developed facts.

The district court also considered whether the fact that students had been subjected to URI disciplinary procedures could serve as a "plus" factor. URI Student Senate, 707 F. Supp. 2d at 301-02. It rejected that hypothesis. Id. at 301. The appellants do not mount a credible challenge to this conclusion: although they note in their briefs that students were referred to URI for possible discipline, they do not point specifically to these referrals as a source of incremental harm. Nor do they offer any explanation as to how disciplinary referrals might constitute a

-17-

"plus" factor. Any argument to this effect is, therefore, waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

The appellants have one last arrow in this quiver. They complain that the Ordinance prevents them from living in Narragansett. That is codswallop pure and simple: the Ordinance does not prevent anyone from living anywhere. Although the Ordinance creates consequences for those who choose to reside in the Town but fail to abide by the law, these consequences, whether viewed singly or collectively, do not constitute harm to any tangible interest enjoyed by the appellants.

Let us be perfectly clear. We, like the district court, are uneasy about the absence of a hearing. In addition, we recognize that there are potential applications of the Ordinance that might impair constitutionally protected liberty or property interests (say, if the police were to enforce the Ordinance in an invidiously discriminatory way). But the appellants have brought a facial challenge, not an as-applied challenge, and the record is barren of evidence that unconstitutional applications have occurred. The mere possibility of misuse is insufficient to invalidate an ordinance on a facial attack. See Ohio v. Akron Ctr. for Reprod. Health, 497 U.S. 502, 514 (1990).

To conclude, the appellants have failed to demonstrate, as would be required to sustain a facial challenge, that any of the incremental harms to which they point in the hope of satisfying the

requirements of the stigma plus standard inevitably results from the Ordinance's implementation. We therefore reject the appellants' procedural due process claim.

**2. Overbreadth**. The appellants complain that the Ordinance is overly broad. The focal point of this plaint is their allegation that the Ordinance penalizes landlords and tenants merely because of their association with a place or an event and, thus, trenches upon the First Amendment right of association.[9] Landlords and tenants, they say, are free to host social gatherings and invite such persons as they may wish.

We need not linger long over this asseveration. "[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" Chicago v. Morales, 527 U.S. 41, 52 (1999) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973)). Thus, "[i]n a facial challenge to the overbreadth . . . of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." Vill. of Hoffman Estates v. Flipside, Hoffman Estates,

_____

[9] The appellants also suggest that the "right of landlord and tenant to contract . . . is infringed" by the overbreadth of the Ordinance. The appellants, however, have offered no authority to suggest that the right to contract is a recognized First Amendment interest. Manifestly, it is not.

-19-

Inc., 455 U.S. 489, 494 (1982); accord Whiting v. Town of Westerly, 942 F.2d 18, 21 (1st Cir. 1991). The Supreme Court has warned that "[t]he overbreadth doctrine is 'strong medicine' that is used 'sparingly and only as a last resort.'" N.Y. State Club Ass'n v. City of New York, 487 U.S. 1, 14 (1988) (quoting Broadrick, 413 U.S. at 613); see also McCullen v. Coakley, 571 F.3d 167, 182 (1st Cir. 2009); New Engl. Accessories Trade Ass'n v. City of Nashua, 679 F.2d 1, 4 (1st Cir. 1982).

The appellants' overbreadth argument misses the mark. The constitutionally protected right of association cannot be reinvented to suit a plaintiff's fancy. It has never been expanded to include purely social gatherings. Rather, it is contingent on the presence of underlying individual rights of expression protected by the First Amendment. See Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 50 (1st Cir. 2005). As we explain below, there is no such underlying right at stake here.

The Court has identified two types of "freedom of association" that merit constitutional protection: (i) "choices to enter into and maintain certain intimate human relationships" and (ii) association "for the purpose of engaging in those activities protected by the First Amendment." Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18 (1984). These categories cannot be stretched to form a generic right to mix and mingle. City of Dallas v. Stanglin, 490 U.S. 19, 24 (1989) (concluding that ordinance restricting

-20-

attendance at dance halls did not reach the kind of "expressive association that the First Amendment has been held to protect"). In the teeth of these authorities, the appellants urge us to sanctify a generalized "right to congregate and socialize." This free-wheeling right far outstrips the bounds of recognized First Amendment protections.

In the case at hand, we have construed the Ordinance as requiring that the prosecution prove that an offending gathering created not only a substantial disturbance but also one involving a violation of law. See infra Part II(B)(3). Mere police intervention is not enough. See id. In light of this construction, we conclude that the Ordinance does not reach "a substantial amount of constitutionally protected conduct." Vill. of Hoffman Estates, 455 U.S. at 494.

The concern that the Ordinance, if applied in certain instances, could infringe upon constitutionally protected rights (by, say, being invoked to interfere with a political gathering or to disband a prayer meeting) may be valid in the abstract. But we do not deal here in abstractions, and the appellants have neither pressed nor adduced evidence to support an as-applied challenge. More is needed to sustain a facial overbreadth challenge. Cf. Morales, 527 U.S. at 52-53 (declining to invalidate ordinance on facial overbreadth grounds because it prohibited neither speech nor any form of expressive conduct).

-21-

**3. Vagueness.** Finally, the appellants maintain that section 46-31 of the Ordinance is unconstitutionally vague. They bemoan the Ordinance's use of undefined terms such as "substantial disturbance," "public nuisance," and "a significant segment of a neighborhood." These terms, the appellants theorize, do not provide landlords, tenants, or other persons fair notice as to what behavior is proscribed. Furthermore, the phrases fail to provide objective standards under which those charged with enforcing the Ordinance can do so even-handedly.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). A law that survives an overbreadth challenge because it does not reach a substantial amount of conduct protected by the First Amendment may still be vulnerable to a facial vagueness challenge under the Due Process Clause. Whiting, 942 F.2d at 22. "For such a facial challenge to succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications." Id.; see Donovan v. City of Haverhill, 311 F.3d 74, 77 (1st Cir. 2002) ("To prevail in a facial challenge to an ordinance that does not regulate constitutionally protected conduct, plaintiffs must surmount a dauntingly high hurdle.") (citing Vill. of Hoffman Estates, 455 U.S. at 498-99).

To comport with the strictures of due process, a law must define an offense "'[1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.' The void-for-vagueness doctrine embraces these requirements." Skilling v. United States, 130 S. Ct. 2896, 2927-28 (2010) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)); see also United States v. Williams, 553 U.S. 285, 304 (2008); Morales, 527 U.S. at 56; McCullen, 571 F.3d at 182-83. Nevertheless, words are rough-hewn tools, not surgically precise instruments. Consequently, some degree of inexactitude is acceptable in statutory language. See Grayned, 408 U.S. at 110 (acknowledging that one "can never expect mathematical certainty from our language"). Consistent with this reality, "the fact that a statute requires some interpretation does not perforce render it unconstitutionally vague." IMS Health Inc. v. Ayotte, 550 F.3d 42, 61 (1st Cir. 2008); see also Barr v. Galvin, ___ F.3d ___, ___ (1st Cir. 2010) [No. 09-2426, slip op. at 16]. It follows that "reasonable breadth" in the terms employed by an ordinance does not require that it be invalidated on vagueness grounds. Grayned, 408 U.S. at 110.

We are convinced that the Ordinance is sufficiently clear to survive the appellants' vagueness challenge. Words such as "substantial" and "significant," if read in a vacuum, might be

problematic.  Cf. Fantasy Book Shop, Inc. v. City of Boston, 652 F.2d 1115, 1119, 1123-24 (1st Cir. 1981) (finding impermissibly vague provision allowing denial of license where granting it would "otherwise significantly harm[] the legitimate protectable interests of the affected citizens of the city" (alteration in original)).  Here, however, the challenged phrases do not appear in a vacuum.  The Ordinance contains additional terms that supply concrete guidance as to the behavior that it prohibits and the circumstances in which it can be enforced.

Perhaps most important, section 46-31 authorizes police intervention only in the event that "conduct constituting a violation of law" occurs.  The prerequisite "violation of law" must pertain to some law other than the Ordinance itself.  In our view, the requirement that a violation of law be committed as a condition precedent to police intervention provides adequate guidance to ensure that the Ordinance is not arbitrarily enforced.  See Grayned, 408 U.S. at 112 (noting that existence of particularized enforcement context may undercut claim of vagueness).

Our conclusion that the Ordinance withstands the appellants' assault is reinforced by other considerations.  First, subsection 46-31(a) furnishes a non-exhaustive list of predicate offenses that will allow a police officer to enforce the Ordinance. The existence of clear examples of conduct covered by a law may, in certain circumstances, help to insulate the law against an

accusation of vagueness.  See, e.g., Parker v. Levy, 417 U.S. 733, 754 (1974).

Second, we are privy to a straightforward articulation of the Town's purpose in adopting the Ordinance.  This clear statement helps to dispel any uncertainty.

The Supreme Court has looked to an ordinance's preamble to ascertain what activity it was intended to prohibit.  See Grayned, 408 U.S. at 110-11; see also IMS Health, 550 F.3d at 62 (noting that, in adjudicating a facial vagueness challenge, "the state's articulated purpose narrows the interpretive lens through which we must view the problem").  The preamble to the original version of the Ordinance explains that "due to inadequate supervision, some large gatherings of people . . . frequently become loud and unruly to the point that they constitute a threat to the peace, health, safety, or general welfare of the public." It goes on to explain that the Town is required to respond over and over to such gatherings "to restore and maintain the peace and protect public safety" and that such repetitive responses unduly burden municipal resources.  It is thus apparent that the Ordinance is aimed at "discourag[ing] the occurrence of repeated loud and unruly gatherings."  We think that this plainly articulated purpose is a significant contextual clue.  In this instance, it helps to inform the meaning of the contested language.

In the interest of clarity, we note that we read the Ordinance to require that, in order to impose liability under sections 46-34 and 46-35, the prosecution most prove that a gathering creating a substantial disturbance involving a violation of law occurred both at the time of the initial posting and when the subsequent intervention took place. Police intervention at a residence is not enough, by itself, to establish an Ordinance violation. Thus, the penalties prescribed by the Ordinance — fines and community service — cannot flow merely from a police officer's decision to intervene at a gathering.

The bottom line is that, viewed in context, it is clear what conduct the Ordinance as a whole forbids. Taken together, the requirement that someone at a gathering must have committed a predicate offense, the list of examples of violations of law that might serve as such a predicate to police intervention included in the Ordinance, and the Town's articulated concern about quality-of-life issues provide sufficient enforcement guidance to police and adequately define the type of behaviors prohibited by the Ordinance. One can envision many permissible applications of the Ordinance. No more is exigible to ward off a facial challenge premised on vagueness grounds. See, e.g., Vill. of Hoffman Estates, 455 U.S. at 497; Whiting, 942 F.2d at 22.

-26-

**III. CONCLUSION**

We need go no further. For the reasons articulated above, we uphold the entry of summary judgment.

**Affirmed**.

The current version of the Ordinance provides:

### Sec. 46-31. Public nuisance.

(a) It shall be a public nuisance to conduct a gathering of five or more persons on any private property in a manner which constitutes a substantial disturbance of the quiet enjoyment of private or public property in a significant segment of a neighborhood, as a result of conduct constituting a violation of law. Illustrative of such unlawful conduct is excessive noise or traffic, obstruction of public streets by crowds or vehicles, illegal parking, public drunkenness, public urination, the service of alcohol to minors, fights, disturbances of the peace, and litter.

(b) A gathering constituting a public nuisance may be abated by all reasonable means including, but not limited to, an order requiring the gathering to be disbanded and citation and/or arrest of any law violators under any applicable ordinances and state statutes.

### Sec. 46-32. Notice of unruly gathering; posting, mailing.

(a) When the police department intervenes at a gathering which constitutes a nuisance under this article, the premises at which such nuisance occurred shall be posted with a notice stating that the intervention of the police has been necessitated as a result of a public nuisance under this article caused by an event at the premises, the date of the police intervention, and that any subsequent event within the period set forth below on the same premises, which necessitates police intervention, shall result in the joint and

---

[10] We reproduce here the version of the Ordinance that is currently available through the Town's official website. This version differs in a small number of petty ways from the version of the Ordinance on record in this case as an attachment to the agreed statement of facts. Any differences are of absolutely no significance in the resolution of this appeal.

several liability of any guests causing the public nuisance, or any persons who own or are residents of the property at which the public nuisance occurred, or who sponsored the event constituting the public nuisance as more fully set forth below. Any notice posted between September 1 and May 31 of any year shall remain posted until May 31. Any notice posted between June 1 and August 31 of any year shall remain posted until August 31.

(b) The residents and owner of such property shall be jointly responsible for ensuring that such notice is not removed or defaced and it shall be a Code violation carrying a penalty of a minimum, mandatory $100.00 fine in addition to any other penalties which may be due under this section if such notice is removed, obscured or defaced, provided, however, that the residents of the premises or sponsor of the event, if present, shall be consulted as to the location in which such notice is posted in order to achieve both the security of the notice and its prominent display.

## Sec. 46-33.  Mailing of notice to property owner.

Notice of the intervention shall also be mailed to any property owner on the Town of Narragansett property tax assessment records and shall advise the property owner that any subsequent such intervention within posting periods set forth in section 46-32(a) on the same premises shall result in liability of the property owner for all penalties associated with such intervention as more particularly set forth below.

## Sec. 46-34.  Persons liable for subsequent response to gathering constituting a public nuisance.

(a) If the police department is required to respond to a gathering constituting a public nuisance on the premises more than once in any posting periods set forth in section 46-32(a), the following persons shall be jointly and severally liable for fines as set forth below:

(1) The person or persons who own the property where the gathering constituting the public nuisance took place, provided that notice has been mailed to the owner of the property as set forth herein and the gathering occurs at least two weeks after the mailing of such notice.

(2) The person or persons residing on or otherwise in control of the property where such gathering took place.

(3) The person or persons who organized or sponsored such gathering.

(4) All persons attending such gatherings who engage in any activity resulting in the public nuisance.

(5) Nothing in this section shall be construed to impose liability on the resident or owners of the premises or sponsor of the gathering, for the conduct of persons who are present without the express or implied consent of the resident or sponsor, as long as the resident and sponsor have taken all steps reasonably necessary to exclude such uninvited participants from the premises, including landlords who are actively attempting to evict a tenant from the premises.

(b) Where an invited guest engages in conduct which the sponsor or resident could not reasonably foresee and the conduct is an isolated instance of a guest at the event violating the law which the sponsor is unable to reasonably control without the intervention of the police, the unlawful conduct of the individual guest shall not be attributable to the sponsor or resident for the purposes of determining whether the event constitutes a public nuisance under this section.

## Sec. 46-35.  Penalties for violation.

(a) It shall be a Code violation punishable as set forth herein when intervention at the same location to abate a gathering constituting a public nuisance occurs within any posting periods set forth in section 46-32(a) after the property was posted in accordance with section 46-11:

(1) For the first intervention in a posting period the fine shall be a minimum mandatory $300.00;

(2) For the second such intervention in a posting period the fine shall be a minimum mandatory $400.00;

(3) For any further such responses in a posting day period the fine shall be a minimum mandatory $500.00.

(b) In addition to the above, the municipal court shall be authorized to order the person or persons in violation to perform community service. For a first intervention ordering community service shall be discretionary. For a second or third intervention, the municipal court shall, in addition to the monetary penalty set forth above, order the person or persons in violation to perform not less than 25 hours of community service for a second intervention and not less than 50 hours of community service for a third intervention.